O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

**MGA ENTERTAINMENT, INC.,**

**Plaintiff,**

**vs.**

**MATTEL, INC., and ROBERT A. ECKERT,**

**Defendants.**

**Case No.: CV 11-01063 DOC(RNBx)**

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE**

Before the Court is a Motion to Dismiss filed by Defendants Mattel, Inc., and Robert A. Eckert against Plaintiffs MGA Entertainment, Inc. After reviewing the motion, opposition, and reply, and after hearing oral argument, the Court GRANTS Defendants' Motion, but dismisses without prejudice.

**I. Background**

**a. Prior Litigation Between Mattel and MGA: Cases 05-2727 and 04-9049**

On April 27, 2004, Mattel, Inc., ("Mattel") filed a state court complaint against a former employee Carter Bryant ("Bryant") alleging that Bryant breached his contractual and common law duties to Mattel by failing to disclose his concept sketches and sculpts of the Bratz dolls prior to leaving Mattel for MGA Entertainment, Inc. ("MGA") on or about October 4, 2000. (04-9049 Dkt. 1).

MGA intervened in Mattel's suit and, on April 13, 2005, filed a stand-alone complaint in federal court against Mattel for unfair competition, trade dress infringement, dilution, and unjust enrichment. (05-2727 Dkt. 1). That complaint alleges that Mattel infringed MGA's distinctive packaging and interfered with MGA's business relationships.

On June 19, 2006, the Honorable Stephen G. Larson consolidated these cases. (05-2727 Dkt. 47).

**b. Phase 1 of Prior Litigation**

Mattel entered into a settlement with Bryant on the eve of the "phase 1" trial, leaving the following claims against MGA and other defendants to be tried to the jury: (1) intentional interference with contract; (2) aiding and abetting breach of fiduciary duty; (3) aiding and abetting breach of duty of loyalty; (4) conversion; (5) statutory unfair competition; (6) declaratory relief; and (7) copyright infringement. (04-9049 Dkt. 3917 at 11). Mattel prevailed on each of its claims. On the basis of the jury's special and general verdicts and after independently examining the similarity between the concept sketches/sculpts and MGA's Bratz dolls, the district court placed the Bratz trademarks in a constructive trust and enjoined MGA from continuing to sell dolls that were substantially similar to Bryant's initial works. MGA appealed.

During the pendency of MGA's appeal of the phase 1 orders, discovery preceded on the claims not tried in the phase 1 trial. Mattel repeatedly amended its pleadings three times, ultimately filing the operative Fourth Amended Answer and Counterclaims ("FAAC"). (04-9049 Dkt. 7714). The FAAC alleged, among other things, MGA's violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") and trade secret misappropriation. These claims arose from MGA's relationships with Bryant and other former Mattel employees who

allegedly stole Mattel's confidential information before leaving Mattel. The FAAC's claims also arose out of MGA's alleged litigation misconduct and unwillingness to comply with the phase 1 jury's verdicts, though many of these allegations were dismissed on August 2, 2010.

MGA, in turn, narrowed its trade dress infringement allegation to the two-pronged claim that Mattel copied MGA's trapezoidal and heart-shaped packaging.

**c. Ninth Circuit Ruling Affecting Prior Litigation**

On July 22, 2010, MGA prevailed on its appeal. In vacating the constructive trust and injunction, the Ninth Circuit held that the equitable relief was impermissibly broad and predicated upon jury verdicts tainted by erroneous instruction.

**d. Phase 2 of Prior Litigation**

On August 16, 2010, MGA filed counterclaims-in-reply alleging Mattel's RICO violations, trade secret misappropriation, and wrongful injunction. (04-9049 Dkt. 8583). MGA alleged that Mattel and its CEO, Robert Eckert, ("Eckert") engaged in illegal market research and aggressive tactics in preparation for and during the pending litigation, including discovery abuses, disregard for the statute of limitations, and the pursuit of injunctive relief after phase 1.

On October 5, 2010, the Court dismissed MGA's wrongful injunction claim but permitted MGA's other counterclaims-in-reply. (Dkt. 8892). The Court held that *all* MGA's counterclaims-in-reply, including the one for wrongful injunction, were compulsory. *Id.* at 14. However, the Court dismissed MGA's wrongful injunction counterclaim-in-reply on the merits, reasoning that MGA sought to "recover two categories of damages that are unavailable as a matter of law." *Id.*

On October 22, 2010, in response to the Ninth Circuit ruling, this Court granted MGA's motion for a new trial on all claims and issues tried to the jury in phase 1, finding that the indistinct and inseparable claims were all infected by instructional error. The Court separately discarded with the earlier bifurcation of claims, and ordered that all pending claims between the parties be tried in a single proceeding to commence on January 11, 2011.

On January 5, 2011, the Court granted Mattel summary judgment on MGA's claims for trade dress infringement, dilution, common law unfair competition, and unjust enrichment and

MGA's counterclaim-in-reply for a RICO violation. (Dkt. 9600). The Court denied summary judgment as to MGA's claim for statutory unfair competition and MGA's counterclaim-in-reply for trade secret misappropriation.

**e. Current Litigation and Motion to Dismiss: Case 11-1063**

On February 3, 2011, two weeks into trial in the prior litigation, MGA filed a complaint, referred to here as MGA's "current complaint," in a stand-alone action against Mattel and Eckert ("Defendants"). (Dkt. 1). MGA's current complaint pleads three claims. First, MGA alleges that "beginning at least . . . in 2001 and continuing through the present time [Defendants have] been violating Section 2 of the Sherman Act by monopolizing and attempting to monopolize the sale and distribution of fashion dolls in the United States." (Compl. ¶¶ 52-53). Second, MGA alleges that Mattel sought a remedy in its prior litigation against MGA that "required the district judge to enter a ruling that was an abuse of discretion," giving rise to an abuse of process claim. *Id.* at ¶¶ 59-60. Finally, MGA alleges that Mattel sold Wee 3 Friends "at prices which are below [Mattel's] fully allocated cost," giving rise to a claim under California Business & Professions Section 17043. *Id.* at ¶¶ 61-62.

The parties stipulated to extending Defendants' deadline for an Answer to March 17, 2011. (Dkt. 9). On March 17, 2011, in lieu of an answer, Defendants filed the present Motion to Dismiss that is before the Court.[1] (Dkt. 11). Defendants' Motion raises arguments both on procedural grounds and on the merits. Defendants contend that MGA's current complaint is procedurally barred under the principles of *res judicata* because: (1) the prior litigation is a product of claim-splitting; or (2) alternatively, because the current claims were compulsory under Federal Rule of Civil Procedure 13. On the merits, Defendants contended that: (1) the *Noerr-Pennington* doctrine protects litigation not brought in bad faith and thus bars MGA's antitrust and abuse of process claim; (2) California Civil Code Section 47(b) protects litigation that is not a malicious prosecution and thus bars MGA's abuse of process claim; (3) MGA's

[1] Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted to be filed before an answer. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

relief for damages is barred to the extent it arises from a claim for a wrongfully obtained injunction; (4) MGA fails to state an antitrust claim because it fails to adequately allege the geographic market, product market, or Mattel's monopolization power; and (5) MGA fails to state a claim under California Business & Professions Section 17043 because MGA does not allege the sale price or cost of the product allegedly sold below cost.

**f. Conclusion of Phase 2 and Effect on Case 11-1063 Motion to Dismiss**

On August 4, 2011, this Court rendered judgment on the merits pursuant to a jury verdict in case 04-9049. (Dkt. 10704). The judgment awarded MGA $85 million in compensatory damages, $85 million in exemplary damages, and $2,172,000 in attorneys' fees for MGA's counterclaim-in-reply for trade secret misappropriation. Judgment was entered against MGA regarding its claims for common law unfair competition, statutory unfair competition, trade dress infringement, trade dress dilution, RICO violations, unjust enrichment, and wrongful injunction. Judgment was also entered against Mattel regarding its remaining claims against MGA. MGA was awarded addition attorneys fees and costs of more than $100 million.

On September 12, 2011, Defendants filed a Notice of Finality with the Court indicating that, because a final judgment had been entered in the prior litigation, Defendants' Motion to Dismiss the present case is no longer properly analyzed under the theory of claim-splitting, but rather under *res judicata*. (11-1063 Dkt. 26).

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible

claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.* Dismissal does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)).

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id*.

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. Discussion

Because the Court GRANTS Defendants' motion under the doctrine of *res judicata* or Federal Rule of Civil Procedure 13(a), the Court does not reach Defendants' alternative arguments.

### a. MGA's Three Claims Are Dismissed Under the Doctrine of *Res Judicata*

The doctrine of *res judicata*, also referred to as claim preclusion, bars litigation in a subsequent suit of any claims that were raised or could have been raised in a prior suit where there has been: (1) a final judgment on the merits in the prior suit; (2) the prior suit involved the

same parties or parties in privity; and (3) there is an identity of claims between the two suits.[2] *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). Because *res judicata* is an affirmative defense, the burden is on Defendants, as the parties asserting it, to prove all of its elements. *See* Fed. R. Civ. P. 8(c); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 n.4 (9th Cir. 1988) (abrogated on other grounds).

The parties do not dispute that this Court's judgment in the prior case (04-9049 Dkt. 10704) was a final judgment by a court of competent jurisdiction.[3] *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) ("[A] final judgment retains all of its *res judicata* consequences pending decision of the appeal."). Nor do they seriously dispute that that this is a case involving the same parties in privity, given that Eckert is a senior employee of Mattel—a named party in MGA's prior litigation—and Eckert's conduct was the subject of MGA's prior

---

[2] MGA misstates this Circuit's law governing *res judicata*. The Ninth Circuit has not adopted the rule, urged by MGA, that *res judicata* bars *only* a later claim alleging facts "virtually identical" to those alleged in prior litigation. (Pl. Opp'n at 11). MGA also suggests, without citation, that *res judicata* bars a current claim only if it was actually litigated in the prior litigation and not where the elements of the current and prior claims differ. *Id.* Contrary to MGA's contention, actual litigation of claims is not a requirement for *res judicata*. *See Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). The difference in elements between the claims in two suits is similarly irrelevant; indeed, *res judicata* prevents "an imaginative lawyer" from relitigating old facts by "attaching a different legal label." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1079 (9th Cir. 2003).

[3] The doctrine of *res judicata* rather than claim splitting applies to Mattel's Motion to Dismiss because this Court has rendered a final decision on the merits. The parties' briefs disputed whether the present case could be dismissed as a product of claim-splitting, a doctrine which applies the principles of *res judicata* to multiple actions that lack final judgments. On April 4, 2011, after the parties submitted their briefs in the present case 11-1063, this Court rendered a final judgment (Dkt. 10704) on the merits in the prior case 04-9049. Because this prior case now has a final judgment, Defendants' Motion to Dismiss the present case is no longer properly analyzed under the theory of claim-splitting, but rather under *res judicata*. *Compare Adams v. Cal. Dept. of Health Serv.*, 487 F.3d 684, 688-89 (9th Cir. 2007) (applying claim-splitting doctrine prior to entry of final judgment); *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (applying claim preclusion doctrine after entry of final judgment). However, because the parties' discussion of claim-splitting necessarily involved the application of *res judicata* principles, no additional briefing is necessary.

allegations. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 691 (9th Cir. Cal. 2007) (employees were parties in privity with corporation where corporation was prior suit's defendant and liability was premised on employee wrongdoing); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1064 (S.D. Cal. 2007) (finding privity "even if the named parties differ").

Thus, the only disputed issue is whether the prior suits, cases 05-2727 and 04-9049, shares an identity of claims with the present case 11-1063. Whether there is an identity of claims depends on four factors, the first of which is the most important, namely: (1) the two suits arise out of the same transactional nucleus of facts; (2) the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) substantially the same evidence is presented in the two actions; and (4) the two suits involve infringement of the same right. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982). Because this Court concludes that these four factors show that MGA's current and prior suits share an identity of claims, *res judicata* bars the current claims and dismissal is proper.

**i. The same transactional nucleus of facts give rise to MGA's current and prior claims**

Claims arise from the same transactional nucleus of facts where the same "transaction, or series of transactions" could give rise to both claims, often shown by the similarity of the allegations in the prior and current pleadings. *See Western Sys. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992); *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 691 (9th Cir. Cal. 2007). However, a claim does not arise from the same transactional nucleus of facts where the claim alleges new conduct "subsequent to the last date alleged in the prior adjudication." *Int'l Techs. Consultants*, 137 F.3d at 1388 (internal citations omitted).

Thus, *res judicata* bars MGA's current complaint if Defendants can show that: (1) MGA's allegations in its prior pleadings could give rise to the current claims; and (2) MGA fails to allege new conduct occurring between August 16, 2010, and February 3, 2011. Those dates reflect MGA's last pleadings in the prior litigation and MGA's filing of its current complaint.

**1. The same transactional nucleus of facts give rise to MGA's prior claims and its current abuse of process and antitrust claims to the extent the antitrust claim relies on Defendants' litigation conduct before August 16, 2010**

All of MGA's abuse of process claim and a substantial portion of MGA's antitrust claim rely on Defendants' conduct during and in preparation for litigation prior to August 16, 2010. Indeed, MGA concedes in its Opposition Brief that MGA's current claims "came into being on July 22, 2010," with the Ninth Circuit ruling reversing the district court's judgment. (Pl. Opp'n at 1, 9-10). The Complaint refers to conduct relied on by MGA in its prior pleadings and which occurred before August 16, 2010, as shown by other documents filed with the Court. Defendants identify these documents, arranged in a useful chart, to show that MGA's current complaint mirrors MGA's earlier allegations about Defendants' litigation conduct prior to August 16, 2010.[4] *See* Mot. Dismiss at 9-10; Reply at 3, n.1. For example, the gravamen of MGA's abuse of process claim is that Mattel sought a remedy against MGA that "required the district judge to enter a ruling that was an abuse of discretion"—conduct which occurred prior to August 16, 2010. (Compl. ¶¶ 16-25, 30, 59-60). Other litigation conduct prior to August 16, 2010, including Mattel's alleged discovery abuses and disregard for the statute of limitations, comprise a substantial amount of MGA's antitrust claim. *Id.* at ¶¶ 16-25, 30. These allegations appeared in MGA's pleadings on and prior to August 16, 2010. *See* (04-9049) Dkt. 2573 ¶¶ 59-69 (MGA's March 8, 2008 proposed statement of facts); Dkt. 8583 ¶¶ 30-36, 60, 315-18 (MGA's August 16, 2010, counterclaims in reply). Because the entire abuse of process claim is based on Defendants' conduct in the prior litigation—conduct which must have occurred before August 16, 2010—MGA's current abuse of process claim arises from the same transactional nucleus of facts as MGA's prior claims.[5] Similarly, to the extent MGA's antitrust claim relies

---

[4] This court takes judicial notice of these documents as matters of public record. *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001).

[5] To the extent that MGA relies on its allegation that Defendants filed a "baseless and frivolous new lawsuit" in state court to argue that Defendants engaged in litigation conduct after August

on Defendants' litigation conduct, this claim also arises from the same transactional nucleus of facts as MGA's prior claims.

In its briefs and at oral argument, MGA contends that *res judicata* is unjust because this Court's imposition of a trial date in January 2011 gave MGA too little time to prepare an antitrust case, and thus MGA did not raise an antitrust claim on August 16, 2010. (Pl. Opp'n 1, 9-10). However, *because* MGA never advanced its antitrust claim, the Court was not given the opportunity to decide whether to extend the trial deadline. Regardless, the Ninth Circuit and Supreme Court have "rejected any equitable exceptions to the application of *res judicata* based on 'public policy' or 'simple justice.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (rejecting argument that *res judicata* should not apply due to counsel's failures in prior case); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 69 L. Ed. 2d 103, 101 S. Ct. 2424 (1981).

Furthermore, MGA cannot now contend that this Court procedurally precluded MGA from raising its antitrust claim when the failure rests with MGA. In the prior litigation, this Court *agreed* with MGA that all its counterclaims-in-reply were compulsory, including the RICO and wrongful injunction claims which share the same transactional nucleus of facts as MGA's current antitrust claim. (04-9049 Dkt. 8892 at 14). Because these RICO and wrongful injunction counterclaims-in-reply were compulsory, the Court allowed MGA to raise those claims in the prior litigation. The Court dismissed MGA's wrongful injunction counterclaim-in-reply on the merits, reasoning that MGA sought to "recover two categories of damages that are unavailable as a matter of law." *Id.* Because the Court dismissed MGA's wrongful injunction counterclaim-in-reply on the merits, MGA's own failure to articulate a cognizable claim arising from the injunction prevented MGA from further litigating that claim.

**2. The same transactional nucleus of facts give rise to MGA's prior claims and its current California and antitrust claims to**

16, 2010, this one-sentence allegation is too conclusory. *See* Compl. 30(c). Furthermore, MGA at oral argument conceded that it was not relying on this state action.

**the extent the antitrust claim relies on Mattel's non-litigation conduct before August 16, 2010**

MGA's current complaint does not specify whether the remaining non-litigation conduct by Defendants occurred between August 16, 2010, and February 3, 2011. Instead, MGA alleges that "beginning at least . . . in 2001 and continuing through the present time [Defendants have] been violating Section 2 of the Sherman Act." (Compl. ¶¶ 52-53). MGA also alleges, in one sentence and without any reference to dates, that Mattel sold its Wee 3 Friends dolls "below its fully allocated cost." *Id.* at ¶¶ 53(g), 62.

As Defendants note, documents filed with this Court show that MGA's current complaint mirrors MGA's earlier allegations about Defendants' non-litigation conduct prior to August 16, 2010. *See* Mot. Dismiss at 9-10; Reply at 3, n.1. These documents show, for example, that MGA alleges in both the current and prior complaints the same anticompetitive conduct, such as Mattel's manipulation of NPD data and pressure on companies to not distribute Bratz products or supply MGA with raw material. *Compare* Compl. ¶ 53(b-c) *with* 05-2727 Dkt. 1 at ¶ 9, 76-78, 86, 113 (2005 complaint). In addition, these documents show that, in March and June of 2010, MGA was considering alleging "below cost pricing" for Mattel's Wee 3 Friends as part of an earlier unfair competition claim. *See* 04-9049 Dkt. 8168 at 1-2; Dkt. 8169 at 736:5-7. All these documents existed before MGA's last pleading on April 16, 2011. Given that MGA's current complaint makes almost all the same allegations as its prior ones, Defendants contend that MGA's current and prior suits arise from the same transactional nucleus of facts.[6]

MGA does not dispute the accuracy of Defendants' chart, nor the contention that allegations in MGA's current pleadings appeared in its prior pleadings, and in fact stated at oral argument that MGA would abandon its California claim for pricing below cost. In its briefs, MGA only argues vaguely that the present case is based on "new conduct subsequent to the

---

[6] As Defendants observe, MGA's current complaint also alleges facts which either were in MGA's possession or were public knowledge by 2003, and thus are not "new facts" for purposes of *res judicata*. *See* Reply 3-4 n. 1; *Western Sys. v. Ulloa*, 958 F.2d 864, 871-872 (9th Cir. 1992) ("Ignorance of a party does not . . . avoid the bar of res judicata unless the ignorance was caused by the misrepresentation or concealment of the opposing party.").

existing case." (Pl. Opp'n at 9-10). Read charitably, this statement suggests that MGA alleges conduct after August 16, 2010. Given the language of the Complaint, the extensive documentation indicating the similarity of current and prior pleadings, and given that MGA does not dispute the overlap in allegations, any alleged conduct that occurred before August 16, 2010 is barred by *res judicata*.

**3. To the extent that MGA's antitrust claim alleges conduct after August 16, 2010, those allegations are too conclusory to state a claim**

As MGA conceded at oral argument, none of the conduct alleged in MGA's current complaint is attributed to a date after August 16, 2010.[7] MGA also conceded at oral argument that *res judicata* likely barred its claims arising from Mattel's trade practices and other non-litigation conduct.

The Complaint details some conduct that is expressly attributed to earlier dates, describes other conduct with no dates, and states that monopolization is "continuing through the present time." Compl. ¶ 52. Given the extensive overlap between MGA's current and prior complaints and the absence of conduct attributed to dates after August 16, 2010, the remaining issue is whether MGA's reference to continuous activity is too conclusory to allege conduct by Defendants between August 16, 2010, and February 3, 2011. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("A court need not credit a complaint's "allegations that contradict . . . matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). In their briefs, Defendants and MGA dispute whether allegations of continuous antitrust violations are sufficient to save an antitrust claim from *res judicata*. Because the parties addressed this argument in their briefs, the Court will address this issue, but does so while cognizant that MGA

[7] As noted previously in this Order, MGA at oral argument stated that it was not relying on the allegation that Mattel engaged in a "baseless and frivolous new lawsuit" in state court and in fact MGA planned to abandon this allegation when amending the Complaint. *See* Compl. 30(c).

seemed to abandon its position at oral argument when it conceded that *res judicata* likely barred its claims arising from Mattel's non-litigation conduct.

In *Dual-Deck*, the Ninth Circuit applied collateral estoppel—also referred to as issue preclusion and a close cousin of *res judicata*—to bar an antitrust claim where the complaint asserted "violations of [antitrust] law and other acts taken by the defendant . . . since the filing" of the prior suit and incorporated the factual allegations from the prior suit's complaint. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1463 (9th Cir. 1993). The Ninth Circuit held that this "ambiguous" reference to activity "since the filing" did not show that the plaintiff alleged that defendants had formed a new conspiracy *after* the filing, which was a necessary element of the antitrust claim. *Id.* at 1463-64. Later courts have interpreted *Dual-Deck* as holding that the "plaintiff alleged damages from subsequent *consequences* of the earlier conduct," not new *conduct* done after the filing. *Int'l Techs. Consultants v. Pilkington PLC*, 137 F.3d 1382, 1388 (9th Cir. 1998) (emphasis added).

In contrast, in *Harkins* the Ninth Circuit held that *res judicata* did not bar an antitrust claim where the later complaint alleged that, "at least as early as September 1, 1976 and continuing *without interruption*[, defendants] formulated a plan and have continuously pursued a course of *conduct* intended to unreasonably restrain trade." *Harkins Amusement Enterprises, Inc. v. Harry Nace Co.*, 890 F.2d 181, 182 (9th Cir. 1989) (emphasis added). The court reasoned that it would be "over-technical" to construe the complaint as alleging that a conspiracy formed *only* in September 1, 1976. *Id.* Thus, the court read the complaint as alleging that defendants "conspire[d] continuously since that date," which meant that defendants' conspiracy formed *after* the pleadings in the prior litigation. *Id.* The Ninth Circuit also noted that, "by the defendants' own concession," the facts alleged in the later and prior complaints were "at least 10 percent different," in addition to being "conduct that occurred in a different time period." *Id.* at 184.

The Court finds *Dual-Deck* more persuasive and distinguishes *Harkins*. MGA's current Complaint is more conclusory than that in *Harkins* because MGA does not allege that the "conduct" giving rise to MGA's antitrust violations was "without interruption." Indeed, MGA

does not make any mention of *when* Defendants' *conduct* occurred, alleging only that, "beginning at least . . . in 2001 and continuing through the present time[, Defendants have] *been violating* Section 2 of the Sherman Act by monopolizing and attempting to monopolize the sale and distribution of fashion dolls in the United States." (Compl. ¶¶ 52-53) (emphasis added). Furthermore, unlike in *Harkins*, Defendants here do not concede that MGA's current complaint contains 10 percent new allegations. Instead, Defendants have demonstrated that MGA reiterates the same allegations as in its prior pleadings and MGA conceded at oral argument that *res judicata* likely barred its claims arising from Mattel's non-litigation conduct.

Finally, like in *Dual-Deck*, MGA's current complaint fails to provide any dates to indicate that the alleged conduct occurred after the prior pleadings on August 16, 2010. Like in *Dual-Deck*, MGA's Opposition Brief does not identify *any* allegations of conduct after August 16, 2010, in the current complaint—indeed, MGA omits any mention of Mattel or Eckert's conduct between August 16, 2010, and February 3, 2011, in its summary of the facts of this case.[8] (Pl. Opp'n at 6-7). And, like in *Dual-Deck*, MGA recreates allegations from prior pleadings.

Given that MGA's current claims mirror its prior allegations and that MGA's Opposition Brief does not identify a single distinct act in the current complaint by Defendants between August 16, 2010, and February 3, 2011, MGA's allegations that Defendants' antitrust violations are "continuing" is too conclusory. At best, like in *Dual-Deck*, MGA is only alleging "damages from subsequent consequences of the earlier conduct," and not new conduct occurring between August 16, 2010, and February 3, 2011. *See Int'l Techs. Consultants v. Pilkington PLC*, 137 F.3d 1382, 1388 (9th Cir. 1998).

---

[8] MGA's Opposition Brief cites trial testimony from April 2011—*after* the current complaint was filed—to assert that, in 2004, Mattel formed an agreement with Kohl's to exclude Bratz dolls and that this exclusion "continues to the present." *See* Pl. Opp'n at 12. Even assuming this trial testimony showed antitrust violations conduct between April 16, 2010, and February 3, 2011, MGA cannot defend against a motion to dismiss by relying on new allegations in its Opposition that are absent from the current complaint. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984).

**4. The remaining factors also indicate that MGA's current and prior claims are the same**

As noted earlier, courts consider three additional factors to determine if two suits share an identity of claims, namely whether: (1) substantially the same evidence is presented in the two actions; (2) the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; and (3) the two suits involve infringement of the same right. These factors militate strongly in favor of preclusion.

First, MGA's reliance on the same factual allegations in both its present and prior claim demonstrates that the same evidence would be presented to prove both claims. Although MGA argues that its current claims require "new evidence, new expert discovery," (Pl. Opp'n 1), the availability of *additional* evidence is not enough. Instead, the controlling issue is whether substantially the same evidence could be used to satisfy both claims. *See Western Sys. v. Ulloa*, 958 F.2d 864, 871-872 (9th Cir. 1992); *Int'l Union of Operating Eng'r-Employers Constr. Indus. Pension v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993) (*res judicata* may apply even where there is some difference in the evidence).

Second, the two suits involve infringement of the same right, namely, MGA's right to be compete in the market free from Mattel's allegedly illegal litigation strategy and out-of-court tactics.

Finally, the rights established in the prior judgment would be destroyed or impaired by prosecution of the current antitrust claim. If MGA is successful in its current claims, it could lead to either a double recovery for the same injury or recovery for a claim against which Mattel previously successfully defended. For example, judgment was previously entered against MGA regarding its counterclaims-in-reply that Mattel was liable for RICO violations and wrongful injunction—two claims that share the same transactional nucleus of facts as the current antitrust claim. At oral argument, MGA contended that a victory in on the current antitrust claim would not impair this past judgment because the antitrust claim arose from different conduct than that which gave rise to MGA's counterclaims-in-reply. Yet, MGA contradicted this assertion when

it also argued that its antitrust claim was grounded in Defendants' litigation conduct before August 16, 2010, specifically Defendants' pursuit of unreasonable injunctive relief.

In sum, given that these three factors militate in favor of preclusion and that MGA's current and prior pleadings arise from the same transactional nucleus of facts, MGA's current and prior suits share an identity of claims. Because there has been a final judgment on the merits of a prior suit between the parties in privity and an identity of claims, *res judicata* bars MGA's three claims. *See Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982).

**b. MGA's Three Claims Are Dismissed Because They Were Compulsory Counterclaims in the Prior Litigation**

A party who fails to plead a compulsory counterclaim in a prior action, as required under Federal Rule of Civil Procedure 13(a), is precluded from raising that claim in a later action. *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1201 (9th Cir. 2010). The purpose of this rule is "to prevent multiplicity of litigation and to promptly bring about resolution of disputes before the court." *Id.*

A counterclaim is compulsory where it: (1) "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"; and (2) exists at the time the counterclaimant serves its pleading.[9] Fed. R. Civ. P. 13(a). In the prior litigation, this Court followed Ninth Circuit precedent to hold that Rule 13(a) applied not only to counterclaims, but also rendered compulsory MGA's counterclaims-in-reply, which were filed in response to Mattel's Fourth Amended Answer and Counterclaims. *See* Order 4:16-18 (04-9049 Dkt. 8892); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1525 (9th Cir. 1985) (applying logical relationship test of FRCP 13(a) to counterclaim-in-reply). Thus, MGA's current claims are precluded if Defendants can show that these claims: (1) arose from the same transaction as Mattel's last pleadings in the prior litigation, which was its Fourth Amended Answer and Counterclaims (04-9049 Dkt. 7714); and (2) existed when MGA filed its last pleadings in the

[9] The term "transaction" in Rule 13(a) includes "a series of occurrences." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1, 94 S.Ct. 2504, 2506 n.1 (U.S. 1974).

prior litigation, which were counterclaims-in-reply filed on August 16, 2010 (04-9049 Dkt. 8853).

The parties appear to dispute only whether MGA's *antitrust* claim *arising from the prior litigation* was compulsory. Defendants contend that all three claims MGA brings in the present case 11-1063 are precluded because they were compulsory in either cases 05-2727 or 04-9049. MGA's Opposition Brief does not dispute Defendants' contention regarding MGA's California and abuse of process claims. In addition, MGA conceded at oral argument that it would abandon its California claim and that *res judicata* likely barred its claims arising from Mattel's trade practices and other non-litigation conduct. Instead, in both its briefs and at oral argument, MGA's contends that the Supreme Court and Ninth Circuit have carved out an exception to the compulsory counterclaim rule for antitrust claims arising from a party's conduct in prior litigation.

Because MGA does not appear to dispute that its California and abuse of process claims were compulsory and that the antitrust claim is barred to the extent it is based on Defendants' non-litigation conduct, the Court addresses only MGA's argument that certain Supreme Court and Ninth Circuit precedent exempt from compulsory counterclaim analysis an antitrust claim based on litigation conduct.

**i. The Court is not persuaded to extend *Mercoid* and *Hydranautics* to prior litigation that is not based on patent infringement**

In *Mercoid*, the Supreme Court held that an antitrust claim based on prior patent infringement litigation was not a compulsory counterclaim in that patent litigation, but rather a permissive counterclaim under Federal Rule of Civil Procedure 13(b). *Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661, 671, 64 S. Ct. 268, 274 (1944) (overruled on other grounds, as stated in *Beal Corp. Liquidating Trust v. Valleylab, Inc.*, 927 F. Supp. 1350, 1361 (D. Colo. 1996)). A half-century later, the Ninth Circuit relied on *Mercoid* to hold in *Hydranautics* that "a claim that patent infringement litigation violated an antitrust statute is a permissive, not a mandatory, counterclaim in a patent infringement case, and is not barred in a subsequent suit by

failure to raise it in the infringement suit." *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995).

MGA urges this Court to extend *Mercoid* and *Hydranautics* beyond the realm of patent infringement and to hold that MGA's antitrust claim was not a compulsory counterclaim in the prior non-patent-related litigation. MGA argues that neither *Mercoid* nor *Hydranautics* expressly limit their holdings to prior litigation involving patent infringement, and thus these holdings can be extended to the present case.

First, as Defendants note, MGA cites no case within the Ninth Circuit that extends *Mercoid* or *Hydranautics* beyond the realm of patent infringement and courts in this circuit have refused to do so. MGA does cite one case, *Mead*, in which an Ohio district court held that an antitrust claim was not a compulsory counterclaim in the prior *copyright* infringement litigation. *See Mead Data Central v. West Pub. Co.*, 679 F.Supp. 1455 (S.D.Oh. 1987). However, a court in this Circuit has rejected any analogy to *Mead* because *Mead* applied the Sixth Circuit's standard for compulsory counterclaims and did so in a manner that "differs from the Ninth Circuit standard in several ways." *See Grumman Systems Support Corp. v. Data General Corp.*, 125 F.R.D. 160, 163 (N.D.Cal. 1988). Furthermore, courts in this and other circuits have not followed *Mead* and have not extended *Mercoid* or *Hydranautics* when urged to do so. In fact, the Ninth Circuit has noted that, since *Hydranautics*, the *Mercoid* exception has been read "more narrowly" by other circuits to apply to patent misuse, but not patent invalidity. *Destiny Tool v. SGS Tools Co.*, 344 Fed. Appx. 320, 323 (9th Cir. 2009); see also *Grumman*, 125 F.R.D. at 163 ("[I]t is clear at this point that there is no such general exception [grounded in *Mercoid*] to the operation of Rule 13(a) and no case decided in the last twenty years holds to the contrary."); Herbert Hovenkamp, Mark D. Janis, Mark A. Lemley, IP and Antitrust, Antitrust Allegations as Compulsory Counterclaims in Enforcement Litigation §5.5 n.22 (2001) (noting that cases applying *Mercoid* to prior non-patent-related litigation are "aberrational").

Second, while neither *Mercoid* nor *Hydranautics* expressly limit their holdings to patent infringement litigation, the Ninth Circuit's policy *justification* for an exception to the compulsory counterclaim rule applies to only patent infringement litigation. In *Hydranautics*,

the Ninth Circuit explained that the *Mercoid* exception was due to the unique appeals process in patent infringement litigation. *Hydranautics*, 70 F.3d at 536. Because patent infringement decisions are appealed to the Federal Circuit, treating antitrust claims as compulsory in patent infringement litigation could result in a "difference between the antitrust law generally applicable within each regional circuit, and antitrust law in predatory patent infringement cases." *Id.* While this may be an ex post facto explanation for *Mercoid*'s opaque decision, the Court nonetheless finds the Ninth Circuit's logic a persuasive justification.[10]

Because other courts have not extended *Mercoid* or *Hydranatics* to prior litigation that is not based on patent infringement, this Court will not exempt MGA's antitrust claim from the traditional compulsory counterclaim analysis.

**ii. MGA's current antitrust claim based on Defendants' litigation conduct before August 16, 2010, shares a logical relationship with Mattel's pleadings in the prior litigation**

The Ninth Circuit's "logical relationship test" holds that a claim arises from the same transaction, and thus is compulsory, where it "arises from the same aggregate set of operative facts" as the opponent's pleadings. *See In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992). Two claims may be logically related even though they do not arise out of the same nucleus of facts. *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210-13 (2d Cir. 2004) ("Although the 'logical relationship' test does not require 'an absolute identity of factual backgrounds,' . . . the 'essential facts of the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."). A logical relationship may exist even if the counterclaim's allegations need not be resolved in order to dispose of the underlying claim. *In re Marshall*, 600 F.3d 1037, 1058-59 (9th Cir. 2010).

---

[10] Other Circuits have bemoaned how *Mercoid* "effectively created an exception" to the definition of a compulsory counterclaim "without acknowledging or explaining the exception." *Critical-Vac Filtration Corp. v. Minuteman Intern., Inc.*, 233 F.3d 697, 702 (2d Cir. 2000).

Applying the logical relationship test, MGA's current antitrust claim shares a logical relationship with Mattel's pleadings in the prior litigation. MGA's antitrust claim and Mattel's RICO claim raised in the prior litigation share a logical relationship because each alleges misconduct by the other during the litigation of cases 05-2727 and 04-9049. In the prior litigation, Mattel's FAAC alleged, among other things, that MGA violated the RICO because of MGA's alleged misconduct and unwillingness to comply with the phase 1 jury's verdicts in the prior litigation. In its current antitrust claim, MGA alleges that Mattel engaged in misconduct during the prior litigation through discovery abuse, disregard for the statute of limitations, and pursuit of unreasonable injunctive relief. Because both MGA's current claim and Mattel's prior claim arise from the parties' conduct in the prior litigation, MGA's current claim was compulsory and should have been brought in the prior litigation.

**c. Although MGA's Current Claims Are Barred Under Either Res Judicata or as Compulsory Counterclaims, Dismissal Without Prejudice Is Proper**

Contrary to Mattel's contention, dismissal with prejudice would be improper because, although MGA's current complaint is too conclusory, it does not appear *impossible* for MGA to allege anticompetitive conduct *after* August 16, 2010. *See Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Because leave to amend, whether requested or not, should be granted unless amendment would be futile, this Court GRANTS Defendants' motion to dismiss, but does so without prejudice.

**IV. Disposition**

The Court GRANTS Defendants' motion to dismiss MGA's complaint, but dismisses without prejudice. If MGA wishes to file an amended complaint, it must do so by **November 11, 2011**.

DATED: October 20, 2011

David O. Carter

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE