1  BLECHER & COLLINS, P.C.
   Maxwell M. Blecher (State Bar No. 26202)
2    mblecher@blechercollins.com
   Courtney A. Palko (State Bar No. 233622)
3    cpalko@blechercollins.com
   515 South Figueroa Street, Suite 1750
4  Los Angeles, California 90071
   Telephone: (213) 622-4222
5  Facsimile: (213) 622-1656

6  Attorneys for Plaintiff
   MGA ENTERTAINMENT, INC.
7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    SOUTHERN DIVISION

11

12  MGA ENTERTAINMENT, INC.,          )  CASE NO. CV 11-01063 DOC (RNBx)
                                      )
13              Plaintiff,            )  **PLAINTIFF MGA**
                                      )  **ENTERTAINMENT, INC.'S**
14         vs.                        )  **MEMORANDUM OF POINTS AND**
                                      )  **AUTHORITIES IN OPPOSITION TO**
15  MATTEL, INC. and ROBERT A.        )  **DEFENDANTS' MOTION TO**
    ECKERT,                           )  **DISMISS THE FIRST AMENDED**
16                                    )  **COMPLAINT**
              Defendants.            )
17                                    )  Hon. David O. Carter
                                      )  Courtroom 9D
18                                    )
                                      )  Hearing:  February 13, 2012
19  ─────────────────────────────     )  Time:       8:30 a.m.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................1

BACKGROUND ...............................................................................1

    Ninth Circuit's Opinion..............................................................2

    This Court's August 2, 2010 Order After Remand ........................4

    Jury Verdict and Favorable Judgment after Retrial .....................4

    Law of the Case and Mattel's Continuing Abusive Litigation Tactics..........5

ARGUMENT ..................................................................................7

I.    *Res Judicata* Does Not Apply ...................................................7

    A.    Rights or Interests Established in the Prior Judgment Will <u>Not</u> Be Destroyed or Impaired by Prosecution of the Second Action ............8

    B.    Substantially the Same Evidence Is <u>Not</u> Presented in the Two Actions ...................................................................9

    C.    The Two Suits Do <u>Not</u> Involve Infringement of the Same Right......11

    D.    The Two Suits Do <u>Not</u> Arise out of the Same Transactional Nucleus of Facts ...............................................................11

II.    MGA's Antitrust Claim Alleging Anticompetitive Sham Litigation Is Not a Compulsory Counterclaim........................................12

    A.    Supreme Court and Ninth Circuit Precedent .....................12

    B.    Federal Rule of Civil Procedure 13....................................15

III.    *Noerr-Pennington* Does Not Immunize Mattel's Anticompetitive Conduct........................................................19

    A.    Mattel's Conduct is Sham and Mattel Knew It Had No Basis to Use Abusive Litigation to Exclude MGA from the Market .........20

    B.    The Ninth Circuit's Opinion, the Jury's April 2011 Verdict, and This Court's August 2011 Judgment in MGA's Favor Are Evidence of Sham Litigation and Mattel's Anticompetitive Motive.................22

    C.    The Parties' Factual Dispute Is for the Trier of Fact to Resolve .......24

IV.    MGA Has Properly Alleged an Antitrust Violation....................26

    A.    MGA Has Properly Alleged Relevant Market....................26

    B.    Mattel's Dominant Market Power is Undisputed .............28

i

C.   Substantial Barriers to Entry into the Market Exist ..........................31

D.   MGA Has Shown Anticompetitive Effect and a
Dangerous Probability of Monopolization ..........................................32

V.   If Any Portion of the Complaint Is Deemed Deficient, Leave to
Amend the Pleadings Should Be Freely Granted..........................................35

CONCLUSION ................................................................................................. 35

ii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abramson v. Univ. of Haw.*,
594 F.2d 202 (9th Cir. 1979) ....................................................8, 12

*Alarm Device Mfg. Co. v. Alarm Prods. Int'l, Inc.*,
60 F.R.D. 199 (E.D.N.Y. 1973) ....................................................19

*Am. Ad Mgmt., Inc. v. GTE Corp.*,
92 F.3d 781 (9th Cir. 1996) ....................................................28

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585, 105 S. Ct. 2847 (1985) ....................................32, 33

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519, 103 S. Ct. 897 (1983) ....................................................33

*Aydin Corp. v. Loral Corp.*,
718 F.2d 897 (9th Cir. 1983) ....................................................22

*Boulware v. Nev. Dep't of Human Res.*,
960 F.2d 793 (9th Cir. 1992) ....................................................22, 23

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ....................................................29

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508, 92 S. Ct. 609 (1972) ....................................................20

*Cal. Pharmacy Mgmt., LLC v. Zenith Ins. Co.*,
669 F. Supp. 2d 1152 (C.D. Cal. 2009) ....................................................20

*Cal. Steel & Tube v. Kaiser Steel Corp.*,
650 F.2d 1001 (9th Cir. 1981)....................................................26

*Capital Imaging Assoc., P.C. v. Mohawk Valley Med. Assoc., Inc.*,
996 F.2d 537 (2d Cir. 1993) ....................................................30

*Catch Curve, Inc. v. Venali, Inc.*,
519 F. Supp. 2d 1028 (C.D. Cal. 2007)....................................................24

*Cent. Delta Water Agency v. United States*,
306 F.3d 938 (9th Cir. 2002) ....................................................8

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
674 F.2d 1252 (9th Cir. 1982) ....................................................23, 24

*Competitive Techs. v. Fujitsu Ltd.*,
286 F. Supp. 2d 1118 (N.D. Cal. 2003) ....................................................16

*Costantini v. Trans World Airlines*,
681 F.2d 1199 (9th Cir. 1982) ....................................................8

*DCD Programs, Ltd. v. Leighton,*
  833 F.2d 183 (9th Cir. 1987) .................................................35

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*
  365 U.S. 127 (1961) .........................................................2, 20

*Eastman Kodak Co. v. Image Technical Servs., Inc.,*
  504 U.S. 451, 112 S. Ct. 2072 (1992) ........................ 20, 26, 29, 33

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.,*
  711 F. Supp. 2d 1074 (C.D. Cal. 2010) .....................................20

*Ernest W. Hahn, Inc. v. Codding,*
  615 F.2d 830 (9th Cir. 1980) .................................................22

*E.I. du Pont de Memours & Co. v. Kolon Indus., Inc.,*
  637 F.3d 435 (4th Cir. 2011) .................................................28

*E.W. French & Sons, Inc. v. Gen. Portland, Inc.,*
  885 F.2d 1392 (9th Cir. 1989).................................................34

*Flowers v. Carville,*
  310 F.3d 1118 (9th Cir. 2002) ...............................................25

*Forsyth v. Humana, Inc.,*
  114 F.3d 1467 (9th Cir. 1997) ...........................................26, 28

*Fowler v. Sponge Prods. Corp.,*
  246 F.2d 223 (1st Cir. 1957) ................................................15

*Galavan Supplements, Ltd. v. Archer Daniels Midland Co.,*
  1997 U.S. Dist. LEXIS 18585 (N.D. Cal. Nov. 19, 1997) ..............28

*Gasswint v. Clapper,*
  17 F.R.D. 309 (W.D. Mo. 1955) ............................................16

*Grumman Sys. Support Corp. v. Data Gen. Corp.,*
  125 F.R.D. 160 (N.D. Cal. 1988) ...........................................15

*Harris v. Jacobs,*
  621 F.2d 341 (9th Cir. 1980)..................................................8

*Henan Oil Tools, Inc. v. Eng'g Enters., Inc.,*
  262 F. Supp. 629 (S.D. Tex. 1966) .........................................19

*Hoffman-La Roche Inc. v. Genpharm Inc.,*
  50 F. Supp. 2d 367 (D.N.J. 1999)...........................................25

*Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.,*
  627 F.2d 919 (9th Cir. 1980) ................................................29

*Hydranautics v. FilmTec Corp.,*
  70 F.3d 533 (9th Cir. 1995) ........................... 7, 13, 14, 15, 19

*Image Tech. Servs., Inc. v. Eastman Kodak Co.,*
  125 F.3d 1195 (9th Cir. 1997) ...........................................29, 31

*Ind. Fed'n of Dentists v. FTC,*
    476 U.S. 477 (1986) ..................................................................29

*In re Relafen Antitrust Litig.,*
    346 F. Supp. 2d 349 (D. Mass. 2004)..........................................24

*In re Wellbutrin SR Antitrust Litig.,*
    749 F. Supp. 2d 260, *8-*18 (E.D. Pa. Aug. 31, 2010) ...............23

*In re Wellbutrin SR Antitrust Litig.,*
    2006-1 Trade Cas. (CCH) ¶ 75,158 (E.D. Pa. March 14, 2006) ...............24

*Intel Corp. v. Via Techs., Inc.,*
    No. 99-03062, 2001 WL 777085 (N.D. Cal. Mar. 20, 2001) ......24

*Int'l Boxing Club of N.Y., Inc. v. United States,*
    358 U.S. 242, 79 S. Ct. 245 (1959) .............................................27

*Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension v. Karr,*
    994 F.2d 1426 (9th Cir. 1993) .......................................................9

*Jarrow Formulas, Inc. v. Int'l Nutrition Co.,*
    175 F. Supp. 2d 296 (D. Conn. 2001) ........................................16

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.,*
    552 F.3d 1033 (9th Cir. 2009) .....................................................24

*Karim-Panahi v. Los Angeles Police Dep't,*
    839 F.2d 621, 627 n.4 (9th Cir. 1988) ..........................................7

*Klor's Inc. v. Broadway-Hale Stores, Inc.,*
    359 U.S. 207 (1959) ....................................................................34

*K.M.B. Warehouse Distribs. v. Walker Mfg. Co.,*
    61 F.3d 123 (2d Cir. 1995) ..........................................................30

*Kottle v. Northwest Kidney Ctrs.,*
    146 F.3d 1056 (9th Cir. 1998) .....................................................21

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n,*
    884 F.2d 504 (9th Cir. 1989) .................................................29, 34

*Litton Sys., Inc. v. AT&T,*
    700 F.2d 785 (2d Cir. 1984) ........................................................25

*Longwood Mfg. Corp. v. Wheelabrator Clean Water Sys., Inc.,*
    954 F. Supp. 17 (D. Me. 1996) ....................................................15

*Los Angeles Land Co. v. Brunswick Corp.,*
    6 F.3d 1422 (9th Cir. 1993) .........................................................29

*Los Angeles Memorial Coliseum Comm'n v. NFL,*
    726 F.2d 1381 (9th Cir. 1984) .....................................................27

*Mattel, Inc. v. MGA Entm't, Inc.,*
    616 F.3d 904 (9th Cir. 2010) ............................................. *passim*

*MCI Communications Corp. v. Am. Tel. & Tel. Co.*,
   708 F.2d 1081 (7th Cir. 1983) .................................................... 23

*Mead Data Cent., Inc. v. West Publ'g Co.*,
   679 F. Supp. 1455 (S.D. Ohio 1987) ....................................... 15

*Mercoid Corp. v. Mid-Continent Co.*,
   320 U.S. 661, 64 S. Ct. 268 (1944) .......................................... 13

*Mercy-Peninsula Ambulance, Inc. v. County of San Mateo*,
   791 F.2d 755 (9th Cir. 1986) .................................................... 29

*MRW, Inc. v. Big-O Tires, LLC*,
   2008 U.S. Dist. LEXIS 101902 (C.D. Cal. Nov. 25, 2008) ........ 8

*Nat'l Soc'y of Prof'l Eng'rs v. United States*,
   435 U.S. 679 (1978) .................................................................. 29

*NCAA v. Bd. of Regents of the Univ. of Okla.*,
   468 U.S. 85 (1984) .................................................................... 29

*Nelson v. Miller*,
   227 Kan. 271, 607 P.2d 438 (1980) .......................................... 25

*Newcal Indus., Inc. v. Ikon Office Solutions*,
   513 F.3d 1038 (9th Cir. 2008) ...................................... 26, 27, 28

*Novelty, Inc. v. Mountain View Mktg., Inc.*,
   2010 U.S. Dist. LEXIS 30783 (S.D. Ind. Mar. 30, 2010) ........ 23

*Oahu Gas Serv., Inc. v. Pac. Res., Inc.*,
   838 F.2d 360 (9th Cir. 1988) .................................................... 31

*Oltz v. St. Peter's Comty. Hosp.*,
   861 F.2d 1440 (9th Cir. 1988) .................................................. 34

*Otter Tail Power Co. v. United States*,
   410 U.S. 366, 93 S. Ct. 1022 (1973) ........................................ 20

*Pochiro v. Prudential Ins. Co. of Am.*,
   827 F.2d 1246 (9th Cir. 1987) .............................................. 15, 16

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49, 113 S. Ct. 1920 (1993) ............... 2, 7, 12, 13, 21, 25

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   944 F.2d 1525 (9th Cir. 1991) .................................................... 7

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   866 F.2d 278 (9th Cir. 1989) ...................................................... 7

*Rebel Oil Co v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ...................................... 26, 29, 34

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) .................................................... 35

*Rosenberg Bros. & Co. v. Arnold*,
   283 F.2d 406 (9th Cir. 1960) .................................................35

*Ross v. Bank of Am.*,
   524 F.3d 217 (2d Cir. 2008) ...............................................33

*Stewart v. Sonneborn*,
   98 U.S. 187 (1878) ............................................................25

*Sullivan v. NFL*,
   34 F.3d 1091 (1st Cir. 1994) ..............................................33

*Syufy Enters. v. Am. Multicinema, Inc.*,
   793 F.2d 990 (9th Cir. 1986) ..................................... 26, 27

*Tank Insulation Int'l, Inc. Insultherm, Inc.*,
   104 F.3d 83 (5th Cir. 1997) .................................................15

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008) ..............................................33

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
   875 F.2d 1369 (9th Cir. 1989) ............................................26

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ...............................................26

*United States v. Dentsply Int'l, Inc.*,
   399 F.3d 181 (3d Cir. 2005) ...............................................34

*United States v. E. I. du Pont de Nemours & Co.*,
   351 U.S. 377 (1956) ............................................................29

*United States v. Iron Mountain Mines, Inc.*,
   952 F. Supp. 673 (E.D. Cal. 1996) ......................................15

*United States ex rel. Wilson v. Maxxam, Inc.*,
   2009 U.S. Dist. LEXIS 14375 (N.D. Cal. 2009) .................20

*United States v. Webb*,
   655 F.2d 977 (9th Cir. 1981) ..............................................35

*W. Sys., Inc. v. Ulloa*,
   958 F.2d 864 (9th Cir. 1992).............................................8, 9

*Wyatt v. Cole*,
   504 U.S. 158 (1992) ...........................................................25

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 2 ................................................................ *passim*

15 U.S.C. § 6a .....................................................................28

Federal Rule of Civil Procedure 8(c) ....................................7

Federal Rule of Civil Procedure 13................................................................15

Federal Rule of Civil Procedure 15(a)..........................................................35

Federal Rule of Evidence 201........................................................................30

Federal Rule of Evidence 801(d)(2)...............................................................31

**TREATISES AND OTHER MATERIALS**

Phillip E. Areeda & Herbert Hovenkamp,
    *Antitrust Law* (1992 Supp.) .................................................................31

Teague I. Donahey,
    *Antitrust Counterclaims in Patent Infringement Litigation:*
    *Clarifying the Supreme Court's Enigmatic Mercoid Decision,*
    39 IDEA J. L. & Tech. 225 (1999) ..........................................................16

Herbert Hovenkamp, Mark D. Janis, Mark A. Lemley,
    *IP and Antitrust, Antitrust Allegations as Compulsory Counterclaims in*
    *Enforcement Litigation* (2005) ........................................................ 14, 16

Institute for the Advancement of the American Legal System,
    *Civil Case Processing in the Federal District Courts:*
    *A 21st Century Analysis* (2009) .............................................................18

Restatement (Second) of Torts § 673 cmt. e...................................................25

**PRELIMINARY STATEMENT**

This attempt by Defendants Mattel, Inc. and Robert Eckert (collectively "Mattel") to stop MGA from obtaining access to the Court for redress should be rejected – just as the Ninth Circuit, the jury, and this Court have outright rejected Mattel's legal arguments and claims for relief.  Mattel's undisputed dominant monopoly power in the fashion doll market enabled Mattel to successfully use that power to destroy a competitive product, deplete the commercial value of MGA, and tie MGA up in seven years of baseless litigation – litigation upon which Mattel did not prevail on a single claim and was awarded zero damages.  Mattel's "litigate MGA to death" has been successful; Bratz is a minimal presence, and Barbie again has restored its dominant market share position it enjoyed before Bratz.  MGA's First Amended Complaint ("Complaint" or "FAC") sets forth sufficient facts in a timely filed pleading to state an antitrust claim based on sham litigation, and MGA should now be entitled to discovery to elicit additional facts to support these claims.

**BACKGROUND**

MGA's Complaint arises from the baseless litigation that the fashion doll powerhouse Mattel has ruthlessly pursued – and continues to pursue – against its smaller competitor MGA to which Mattel was starting to lose market share.  The extent of the baselessness was judicially sanctioned as recently as August 2011 in the Court's judgment entered in MGA's favor in the underlying case.  On July 22, 2010, the Ninth Circuit issued a stinging rebuke, which stayed all equitable orders within four hours of oral argument and then in its decision, vacated all the equitable relief under an abuse of discretion standard, and empowered this Court to vacate the entire damage award, which it promptly did.  The April 2011 jury verdict, this Court's interim rulings, and the August 2011 judgment in MGA's favor following the Ninth Circuit's July 22, 2010 directive gave rise to a viable antitrust claim grounded on baseless litigation.

"A winning lawsuit is by definition a reasonable effort at petitioning for

1

redress and therefore not a sham." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 n.5 (1993).  In light of *Noerr-Pennington* immunity and the Supreme Court's standard for proving sham litigation in *PRE*, MGA's antitrust claim became fully viable only after judgment in MGA's favor was entered on August 4, 2011.  After seven years of litigation, hundreds of millions of dollars in attorneys fees, and tens of thousands of docket entries in the underlying case, Mattel was unsuccessful on every single claim and was awarded zero damages.

MGA has sufficiently demonstrated that Mattel's litigation was a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127, 144 (1961).  As Mattel's investment analysis report makes clear: "***Outcome is less relevant*** . . . ***a Bratz 'win' was never part of our model or thesis***."  The judgment awarding compensatory and punitive damages, attorneys fees and costs to MGA for Mattel's theft of MGA's trade secrets – and against Mattel on all claims – makes clear that there is a justiciable issue that Mattel's litigation was objectively baseless and was specifically intended only to interfere directly with MGA's business relationships through the abuse of the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon.  As former Mattel employee Ron Brawer testified, Mattel's goal was to litigate MGA to death.  Brawer 2/5/08 Dep. at 233:18-22.[1]  This antitrust claim attacking Mattel's anticompetitive litigation conduct against MGA did not exist at the time of – and could not practicably have been tried together with – the underlying case.  The sham standard is akin to a malicious prosecution claim, and MGA's case has merit as a result of MGA obtaining a favorable judgment in the underlying case.

**Ninth Circuit's Opinion**

At the Ninth Circuit hearing after the original trial and verdict in Mattel's

---

[1] This Court acknowledged Mattel's admission was "probative of Mattel's intent in filing this lawsuit" but outweighed by its prejudicial effect.  Therefore, the Court excluded Mr. Brawer's testimony from trial.  *See* 3/2/11 (Vol. 2) Tr. 62:11-64:22.

1  favor, Judge Wardlaw expressed skepticism as to the fairness of the proceeding and

2  inquired of Mattel's counsel to explain "what did MGA do wrong?":

3
4
5
> Judge Wardlaw:   I understand the verdict, I understand what ensued.  There were certain jury instructions that were given that almost ensured that would be what ensued, so what I'm trying to figure it out from you is: You say they were wrongfully acquired by MGA?

6
> Mr. Collins:  That is correct.

7
> Judge Wardlaw:  How did, what did MGA do wrong?

8
> Mr. Collins:  MGA interfered . . .

9
10
> Judge Wardlaw:  Did it know that Bryant – did it have any idea that Bryant had this idea and that it was covered by this invention agreement when it made its deal with Bryant.

11  Dec. 9, 2009 Ninth Circuit Hearing Tr. at 19:14-15, 20:16-19, 31:5, 30:24-31:9.

12        The Ninth Circuit found the district court "erred in holding that the

13  [inventions] agreement, by its terms, clearly covered ideas." *Mattel, Inc. v. MGA*

14  *Entm't, Inc.*, 616 F.3d 904, 909-10 (9th Cir. 2010).  Even if extrinsic evidence were to

15  show ideas were covered, the constructive trust still went "too far."

16
17
18
19
> It is not equitable to transfer this billion dollar brand – the value of which is overwhelmingly the result of MGA's legitimate efforts – because it may have started with two misappropriated names.   The district court's imposition of a constructive trust forcing MGA to hand over its sweat equity was an abuse of discretion and must be vacated.

20  *Id.* at 911.

21        Indeed, the Ninth Circuit concluded that the remedies Mattel sought could not

22  be supported under settled law.  After citing the relevant authorities, the Ninth Circuit

23  explained:

24
25
26
27
28
> When the value of the property held in trust increases significantly because of a defendant's efforts, a constructive trust that passes on the profit of the defendant's labor to the plaintiff usually goes too far. . . Even assuming that MGA took some ideas wrongfully, it added tremendous value by turning the ideas into products and eventually, a popular and highly profitable brand.  The value added by MGA's hard work and creativity dwarfs the value of the original ideas Bryant brought with him, even recognizing the significance of those ideas.  We

1
2
infer that the jury made much the same judgment when it awarded Mattel only a small fraction of the more than $1 billion in interest-adjusted profit MGA made from the brand.

3
*Id*.

4   Similarly, the copyright injunction was the result of inappropriate findings and

5   significant legal error (*id*. at 916-17), all of which were forcefully advocated by

6   Mattel.  "Mattel can't claim a monopoly over fashion dolls with a bratty look or

7   attitude, or dolls sporting trendy clothing – these are all unprotectable ideas."  *Id*. at

8   916.

9   **This Court's August 2, 2010 Order After Remand**

10   After remand, Your Honor concurred with Judge Wardlaw and the Ninth

11   Circuit's rationale:

12
13
The order imposing the constructive trust was invalid, because it was overbroad and predicated upon verdicts that were reached after improper instruction.

14
15
16
17
18
19
Aug. 2, 2010 Order on Motion to Dismiss, Dkt. 8423.  Indeed, it was Mattel's lawyers who deliberately and wrongfully solicited the improper jury instructions upon which the initial verdict was reached.  The inappropriate findings and "significant" legal errors and erroneous jury instructions which were all induced by Mattel's lawyers required the entire case to be tried again.  *See, e.g., Mattel*, 616 F.3d at 917-98; Dkt. 10518.

20   **Jury Verdict and Favorable Judgment after Retrial**

21   On April 21, 2011, after a rigorous 3-month retrial, the jury returned a verdict

22   for MGA and awarded $88.5 million in damages to MGA for Mattel's theft of

23   MGA's trade secrets, and found zero liability for MGA on Mattel's copyright

24   infringement and trade misappropriation claims.  Dkt. 10518 (Apr. 21, 2011 Jury

25   Verdict Form – Redacted).  The jury outright rejected Mattel's copyright

26   infringement and trade secret misappropriation claims, finding that Mattel does not

27   own the idea for Bratz or any of the sketches that led to the doll.  *Id*. at 1-14.  The

28   jury further found that MGA proved by clear and convincing evidence that Mattel

acted willfully and maliciously in misappropriating MGA's trade secrets, and MGA is thus entitled to punitive damages.  *See id.* at 26.

Significantly, the jury found that on or before April 2002, Mattel discovered, or should have discovered through the exercise of reasonable diligence, facts that would have caused a reasonable person to suspect that MGA or Mr. Larian intentionally interfered with its contractual relations with Carter Bryant, and therefore Mattel's interference claim was, in fact, statute-barred.  *See id.* at 28.  Even if those claims were not time-barred by the statute of limitations, the jury awarded Mattel the insignificant sum of $5,000 damages from each MGA and Mr. Larian, a mere .01% of the damages levied against Mattel.  It is noteworthy that Mattel has spent seven years and a reported $400 million pursuing a claim on which a jury found $10,000 in damages, which was nonetheless statute-barred!

Because the jury found that Mattel did not prove any copyright infringement by MGA or Mr. Larian, the jury did not need to reach MGA's affirmative defense on statute of limitations, and therefore the jury did not answer Question 6 relating to the statute of limitations period as it pertains to the copyright claim.  *See id.* at 4. Because the jury found that neither MGA nor Mr. Larian misappropriated any of the 80 categories of Mattel's alleged trade secrets, MGA's affirmative defense on statute of limitations was moot, and the jury need not have answered Question 11 pertaining to the statute of limitations for the trade secrets claim.  *See id.* at 5-14.  In any event, since the jury concluded there was *no* misappropriation, it logically follows that the jury would have concluded that *at no time* did Mattel discover, or should it have discovered through the exercise of reasonable diligence, facts that would have caused a reasonable person to suspect that MGA or Mr. Larian had misappropriated any Bratz-related concepts and works.  How could Mattel be charged with knowing or suspecting something which did not exist?

**Law of the Case and Mattel's Continuing Abusive Litigation Tactics**

Not only did Mattel knowingly pursue baseless copyright and trade secret

claims and a time-barred intentional interference claim, and seek imposition of a constructive trust (Dkt. 4305; Dkt. 4441) which no reasonable litigant could expect to be upheld on the record presented under established law, Mattel also advocated for and secured the appointment of an auditor and temporary receiver (Dkt. 4657) based on false allegations that OMNI and Mr. Larian has engaged in fraudulent transfers – a claim which cost MGA millions, reduced its ability to conduct business, and has now been rejected by both this Court and the state court judge.[2]  Mattel even baselessly filed copyright applications on the Carter Bryant drawings which the jury found Mattel did not even own. *See* Dkt. 10518.  And Mattel is not done with its "litigate MGA to death" strategy because it has appealed the Court's judgment.  Mattel's ongoing litigation crusade continues to keep MGA tied up in expensive litigation while also wrongfully keeping a cloud over MGA and its brand and products.

Given Mattel's continuous and ongoing egregious conduct, the antitrust claim becomes stronger by the day, and cannot possibly be barred.  The effect of Mattel's anticompetitive conduct has been to devastate the commercial value of MGA and eliminate competition from the market, causing MGA significant pecuniary loss.  The havoc Mattel caused is not at all satisfied by the existing judgment.  Indeed, Mattel has been successful in its anticompetitive objective; Bratz sales are a mere fraction of what they were while Barbie sales are increasing greatly, surpassing where they were before Bratz.  *See* FAC ¶¶ 53, 74, 81-83.[3]  Mattel has abused MGA and the judicial system; this antitrust case is procedurally proper and necessary and should now proceed to discovery to be decided on the merits.  The Ninth Circuit said it best in its

---

[2] Mattel filed the state court claim in disregard of this Court's order, and this Court suggested that it might constitute contempt. *See* 9/4/10 Hrg. Tr. at 10:12-16; 47:17-48:13.  On April 13, 2011, Mattel's state court claims against MGA for fraudulent transfer of funds were found to lack merit and were dismissed without leave to amend.  "[A]fter an independent analysis, this court concurs with Judge David O. Carter and adopts his findings."  April 14, 2011 Order, *Mattel, Inc. v. MGA Entm't, Inc.*, No. BC444819 (Cal. Super. Ct.).

[3] "Our girls portfolio is the strongest we've had in years, including Barbie, which posted its highest percentage gain in more than a decade."  Mattel's CEO Discusses Q3 2011 Results - Earnings Call Transcript, Oct. 14, 2011, *available at* http://seekingalpha.com/article/299678-mattel-s-ceo-discusses-q3-2011-results-earnings-call-transcript.

6

concluding sentence: "America thrives on competition; Barbie, the all-American girl, will too." *Mattel*, 616 F.3d at 918.

## ARGUMENT

### I.   *Res Judicata* **Does Not Apply**

*Res judicata* does not bar this Complaint. *Res judicata* is an affirmative defense, and the burden is on Mattel to prove all of its elements. *See* Fed. R. Civ. P. 8(c); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 n.4 (9th Cir. 1988) (abrogated on other grounds). The Supreme Court has properly determined that an antitrust claim based on sham litigation requires adjudication of the underlying claim in favor of the antitrust plaintiff before any antitrust claim comes into being. The Supreme Court has made clear: "A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *PRE*, 508 U.S. at 61 n.5. In *PRE*, the Supreme Court expressly invoked the tort of malicious prosecution as an analog to an anticompetitive litigation claim such as alleged in MGA's Complaint. *See id*. at 62 & n.7. A requirement of malicious prosecution claims is proof that the underlying lawsuit was successfully terminated. In *PRE*, the district court ruled that rental of videodiscs to hotel guests did not constitute copyright infringement. The Ninth Circuit affirmed. *PRE*, 866 F.2d 278, 279-82 (9th Cir. 1989). As here, only after the Court decided the infringement claim did the Court then examine whether the antitrust claim was viable – under traditional malicious prosecution standards. *See PRE*, 944 F.2d 1525, 1529-33 (9th Cir. 1991). *PRE* is consistent with *Hydranautics v. FilmTec Corp*., 70 F.3d 533, 536 (9th Cir. 1995) ("It was permissible for Hydranautics to delay suing FilmTec for predatory patent litigation ***until it had succeeded in defeating the infringement case***.") (emphasis added).

An antitrust suit which attacks an underlying lawsuit as anticompetitive and sham cannot be *res judicata* or a compulsory counterclaim at least until the outcome of the underlying suit is determined. Had MGA lost the retrial, it would be

impossible for MGA to prove the underlying lawsuit was a sham.  Therefore, the antitrust claim was not ripe and was premature until MGA secured a favorable verdict and judgment in the underlying suit.

In the Ninth Circuit, the factors to consider are: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) (citing *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980)).  The last of these criteria is the most important.  *Id.*  No single criterion can decide every *res judicata* question; identity of causes of action "cannot be determined precisely by mechanistic application of a simple test."  *Abramson v. Univ. of Haw.*, 594 F.2d 202, 206 (9th Cir. 1979).

Two events are part of the same transaction if they are related to the same set of facts ***and could conveniently be tried together***.  *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 872 (9th Cir. 1992) (emphasis added).  "[W]hen considering whether a prior action involved the same 'nucleus of facts' for preclusion purposes, we must ***narrowly construe the scope of that earlier action***."  *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002) (emphasis added); *see also MRW, Inc. v. Big-O Tires*, LLC, No. CIV S-08-1732, 2008 U.S. Dist. LEXIS 101902, at *17 (C.D. Cal. Nov. 25, 2008).

### A.   Rights or Interests Established in the Prior Judgment Will <u>Not</u> Be Destroyed or Impaired by Prosecution of the Second Action

***First***, the rights or interests established in the prior judgment would not be destroyed or impaired by prosecution of this Complaint.  MGA has not sued or been compensated for injury due to Mattel's abusive litigation tactics used as an anticompetitive weapon in order to restore and maintain its monopoly power.  MGA has not sought recovery for Mattel's violation of the Sherman Act through

anticompetitive litigation, or been previously compensated for loss of its going concern value. MGA has been compensated for an entirely distinct injury (26 categories of trade secret misappropriation) due to Mattel sneaking into showrooms and stealing trade secrets and rushing copycat products to market. The nature of the conduct is different, the type of injury is different, the time period is different, and the fact and amount of damages are different.

On the other hand, if MGA is not allowed to bring this antitrust suit, Mattel will have succeeded in its goal of abusing litigation to destroy a legitimate threat to its monopoly, depleting the going concern value, resources, and reputation of its smaller competitor MGA, and Mattel will be judicially immunized from the consequences of taking advantage of the courts and judicial resources to avoid competing on the merits, and will be rewarded for harming competition. MGA has been irreparably harmed by abusive litigation spanning seven years to date, expending countless resources, and will never be able to recover its prior market position or undo the damage Mattel caused to the value of MGA's company, brands, goodwill, and reputation. Accordingly, this present Complaint does not threaten to and will not undermine the existing judgment in the underlying case. There is absolutely no danger of double recovery because the invasion of rights, the nature of the actual injury, and the evidentiary basis of the claims are entirely different.

**B.  Substantially the Same Evidence Is <u>Not</u> Presented in the Two Actions**

***Second***, substantially the same evidence as was introduced in the underlying action could not be used to prove a Sherman Act violation. *See Ulloa*, 958 F.2d at 871-72; *Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993). In fact, significantly new and distinct evidence is required to prove an antitrust claim, including detailed market analysis and expert economist opinions:

- defining the relevant product market;
  - forensic economist expert discovery, depositions, and reports about

9

whether fashion dolls constitute a separate product market sufficient to satisfy the antitrust definition, or whether, as Mattel contends, fashion dolls falls within a larger market of toys;

- o analysis of other products and whether they are reasonably interchangeable to constitute reasonable substitutes;
- o whether Bratz and Barbie compete in the same market, are co-extensive in that market, or whether, as Mattel contends, Bratz dolls are in a separate market appealing to older girls;

- defining the relevant geographic market;
  - o whether the United States is a proper geographic market, or whether, as Mattel contends, the market is global;
- whether substantial barriers to entry/expansion exist;
- Mattel's market share;
- other competitors' market share and entrance to/exit from the market;
- whether Mattel has monopoly power;
- the nature and extent of Mattel's anticompetitive conduct;
- whether there was harm to competition generally, as opposed to harm to a competitor MGA;
- direct and proximate causation;
- going concern value of MGA and quantifying the detrimental impact of Mattel's anticompetitive litigation conduct on MGA;
- fact and amount of damages to MGA arising from Mattel's anticompetitive conduct (issues of causation, analysis of external factors);
- *Noerr-Pennington* two-part "sham" analysis:
  - o Objective prong:
    - ▪ whether Mattel's lawsuit against MGA was objectively baseless because Mattel knew it was statute-barred;
    - ▪ whether Mattel induced the Court to commit legal error and

1      sought erroneous jury instructions by disregarding applicable law

2      and facts;

3          ▪  whether Mattel's seeking equitable relief in the form of a

4             constructive trust and injunction was objectively baseless.

5      o  Subjective Prong: whether Mattel acted in bad faith to achieve an

6         anticompetitive objective.

7  None of this evidence has been presented or decided in the underlying case.

8      **C.    The Two Suits Do <u>Not</u> Involve Infringement of the Same Right**

9      ***Third***, the two suits involve infringement of different rights.  The Sherman

10  Act is a federal statute with a highly specialized body of law and elements, and

11  which deals specifically with promoting a competitive marketplace and proscribing

12  harm to competition, violation of which entitles the antitrust plaintiff to statutory

13  treble damages.  This Complaint is based on Mattel's abuse of the litigation process

14  to destroy its competitor and the biggest threat to its market dominance, and thus

15  restore and maintain its monopoly power.  Nowhere in the prior suit was Mattel

16  charged with violating or found to violate the Sherman Act by attempting to

17  monopolize the fashion doll market by engaging in abusive sham litigation.  The

18  underlying suit was based in copyright regarding ownership of Bratz and trade secret

19  misappropriation relating to Mattel's pattern and practice of engaging in widespread

20  theft of MGA's trade secrets.  MGA sought compensation, and was compensated,

21  for lost profits flowing from trade secret misappropriation.  MGA has not sought

22  compensation, or been compensated, for the loss of its going concern value.  The

23  invasion of rights, the nature of the actual injury, and evidentiary basis of the claims

24  are entirely different.

25      **D.    The Two Suits Do <u>Not</u> Arise out of the Same Transactional Nucleus of Facts**

26

27  ***Fourth***, the Complaint arises out of a different transactional nucleus of facts

28  than the underlying suit.  The facts comprising the antitrust suit that were not at issue

in the underlying suit include: analysis of the relevant product and geographic market

11

in which MGA and Mattel compete; whether Mattel enjoys monopoly power in the fashion doll market in the U.S.; the harm that Mattel's anticompetitive litigation causes to competition generally; and the damage to MGA in the form of loss of going concern value caused by Mattel.  MGA's antitrust claim involves analysis of: (1) relevant product and geographic market; (2) reasonable substitutes; (3) existence of Mattel's monopoly power; (4) barriers to entry[4]; (5) Mattel's monopolizing conduct; (6) Mattel's alleged procompetitive business justifications; (7) injury to competition; and (8) damages resulting to MGA from the antitrust violation.  No one of these was or could legitimately have been litigated in the recently concluded trial.  *See, e.g.,* *Abramson*, 594 F.2d at 207 (the present case "did not have the requisite coincidence of issues to have required that appellant litigate the entire claim in the prior suit").

**II.    MGA's Antitrust Claim Alleging Anticompetitive Sham Litigation is Not a Compulsory Counterclaim**

**A.    Supreme Court and Ninth Circuit Precedent**

The Supreme Court and Ninth Circuit have ruled that an antitrust case attacking litigation as anticompetitive and sham is not a compulsory counterclaim.  The Supreme Court's *PRE* decision set up a malicious prosecution standard as a condition precedent to the antitrust elements.  As in a malicious prosecution claim, an antitrust claim in which the underlying suit furnishes the predicate does not ripen unless and until there is a favorable outcome.

> The notion of probable cause, as understood and applied in the common-law tort of wrongful civil proceeding, requires the plaintiff to prove that the defendant lacked probable cause to institute an unsuccessful civil lawsuit and the defendant pressed the action for an improper, malicious purpose.

*PRE*, 508 U.S. at 62-66.  As here, *PRE* arose out of a <u>*copyright*</u> claim.

In *Mercoid Corp. v. Mid-Continent Co.*, 320 U.S. 661, 671, 64 S. Ct. 268, 274 (1944), the Supreme Court plainly stated that the antitrust claim is a "claim for damages" that is a "separate statutory cause of action" which is not compulsory:

---

[4] Indeed, a fashion doll called Liv – introduced in 2009 by a powerful toy company Spin Master that spent millions to market it – failed.

1
2
3
4
5
6
7

> The fact that [the antitrust claim] might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) of the Rules of Civil Procedure does not mean that the failure to do so renders the prior judgment *res judicata* as respects it.  The case is then governed by the principle that where the second cause of action between the parties is upon a different claim the prior judgment is *res judicata* not as to issues which might have been tendered but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' (internal citations omitted).

8      The Supreme Court, acting as a court of equity, voiced concern about "placing
9   its imprimatur on a scheme that involves a misuse of the patent privilege and a
10  violation of the antitrust laws.  It would aid in the consummation of a conspiracy to
11  expand a patent beyond its legitimate scope."  *Mercoid*, 320 U.S. at 670.  *Mercoid*'s
12  rationale applies with equal force to Mattel's misuse of the copyright privilege.

13     The Ninth Circuit expressly relied on *Mercoid* in holding that antitrust claims
14  are "permissive" and may be brought in "a separate and subsequent action."
15  "*Mercoid* leaves open the possibility of raising antitrust claims as permissive
16  counterclaims in an infringement action, or in a separate and subsequent action."
17  *Hydranautics*, 70 F.3d at 536.  In *Hydranautics*, the Ninth Circuit held that an
18  antitrust claim alleging that the underlying litigation itself constituted the antitrust
19  violation was **not** a compulsory counterclaim in that litigation.  "It was permissible
20  for Hydranautics to delay suing FilmTec for predatory patent litigation ***until it had***
21  ***succeeded in defeating the infringement case***."  *Id.* (emphasis added).

22     *Hydranautics* draws its vitality from an analogy to malicious prosecution as the
23  Supreme Court subsequently did in *PRE*, 508 U.S. at 62-66.  *Hydranautics* invoked
24  the express analogy to malicious prosecution, which "***cannot be asserted as a***
25  ***counterclaim to the original suit which furnishes the predicate***."  *Hydranautics*, 70
26  F.3d at 537 (emphasis added).  *PRE* is consistent with *Hydranautics* even though
27  *PRE*, as here, arose in the copyright – and not patent – context.  As in a malicious
28  prosecution claim, MGA's antitrust claim in which the underlying suit furnishes the

predicate did not ripen until MGA secured a favorable outcome.  Therefore, it is premature to require that MGA's antitrust claim be filed as a compulsory counterclaim in the underlying suit:

> The antitrust claim attacks the patent infringement lawsuit itself as the wrong which furnishes the basis for antitrust damages.  This is somewhat analogous to a civil claim for malicious prosecution.  It is usually held that a malicious prosecution claim cannot be asserted as a counterclaim to the original suit which furnishes its predicate.  1 Harper, James & Gray, The Law of Torts § 4.8 (2d ed. 1986).  *Mercoid* is consistent with this approach, and we see no reason to distinguish *Mercoid* from the case at bar.

*Id*. at 536-37.

Accordingly, drawing the analogy raised by the Supreme Court in *PRE* (copyright) and the Ninth Circuit in *Hydranautics* (patent), the nature of the underlying lawsuit is not dispositive.  The fact is that an antitrust claim challenging conduct facially protected by *Noerr* is <u>not</u> a compulsory counterclaim.  *Hydranautics* itself is not expressly limited to patent infringement suits; and Mattel has cited no controlling authority which expressly limits *Hydranautics* to patent infringement suits or states that the present antitrust claim is a compulsory claim.

Indeed, scholarly analysis establishes that both *Mercoid* and *Hydranautics* make practical sense and are supported by strong policy, economy, and efficiency justifications.  Such a rule prevents the automatic, reflexive filing of potentially frivolous antitrust compulsory counterclaims, allows sufficient time and due diligence to form a viable legal and factual basis to prove objective baselessness, and weeds out the non-meritorious claims.  *See* Herbert Hovenkamp, Mark D. Janis, Mark A. Lemley, *IP and Antitrust, Antitrust Allegations as Compulsory Counterclaims in Enforcement Litigation* §11.3b6 (2005) ("there are strong policy arguments against treating an anticompetitive litigation claim in particular as a compulsory counterclaim").

The Fifth and First Circuits are in agreement.  "[I]t is clear that the [*Mercoid*] Court specifically considered *rule 13*'s application to the question before it and

14

1  expressly and unambiguously held that the counterclaim was permissive." *Tank*
2  *Insulation Int'l, Inc. Insultherm, Inc*., 104 F.3d 83, 87-88 (5th Cir. 1997) ("the
3  [*Mercoid*] Court plainly held that the antitrust counterclaim was permissive—
4  controlled by rule 13(b)—and therefore, not barred in the second action"); *Fowler v.*
5  *Sponge Prods. Corp*., 246 F.2d 223, 227 (1st Cir. 1957) ("The Supreme Court has
6  clearly stated that a counterclaim for treble damages [under the antitrust laws] is
7  permissive in nature . . ."); *Longwood Mfg. Corp. v. Wheelabrator Clean Water Sys.,*
8  *Inc.*, 954 F. Supp. 17, 17-19 (D. Me. 1996).

9      *Mead Data Central, Inc. v. West Publishing Co*., 679 F. Supp. 1455 (S.D.
10  Ohio 1987) extended *Mercoid* outside the realm of patent infringement to antitrust
11  claims based on copyright infringement.  In *Mead*, the court determined that the
12  antitrust claim was not a compulsory counterclaim to the prior copyright
13  infringement action.  *Id*. at 1461-62 ("Antitrust law plays no part in the Minnesota
14  copyright action.").

15      **B.      Federal Rule of Civil Procedure 13**

16      This Complaint is entirely proper as a separate, standalone claim under general
17  and traditional Rule 13 considerations.  To determine whether a counterclaim was
18  compulsory in a prior action, courts consider whether "the essential facts of the
19  various claims are so logically connected that considerations of judicial economy and
20  fairness dictate that all the issues be resolved in one lawsuit."  *Pochiro v. Prudential*
21  *Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987).  Courts apply a flexible "logical
22  relationship" test in making this determination.  *United States v. Iron Mountain*
23  *Mines, Inc.*, 952 F. Supp. 673, 678 n.9 (E.D. Cal. 1996) ("In the Ninth Circuit, the
24  test under [Rule] 13(a) is the 'logical relationship' test.") (citing *Hydranautics*, 70
25  F.3d at 536); *Grumman Sys. Support Corp. v. Data Gen. Corp*., 125 F.R.D. 160, 162
26  (N.D. Cal. 1988) ("The test is a 'flexible' one taking into account all of the
27  circumstances in light of the purposes of Rule 13(a).").  "Among the factors courts
28  consider in determining whether the test is met is whether 'the facts substantially

overlap, [and whether] the collateral estoppel effect of . . . the first action would preclude [the claims from being brought in a later action.]'"  *Competitive Techs. v. Fujitsu Ltd*., 286 F. Supp. 2d 1118, 1135-36 (N.D. Cal. 2003) (quoting *Pochiro*, 827 F.2d at 1251).

Because this Complaint is based on Mattel's anticompetitive litigation tactics in the underlying litigation, and did not mature into a viable claim until an advanced stage of the prior litigation (at least July 22, 2010 and subsequently reinforced with the August 2011 judgment in MGA's favor), judicial economy and fairness support the filing of this permissive claim as a separate, standalone Complaint.  *See, e.g.*, *Jarrow Formulas, Inc. v. Int'l Nutrition Co*., 175 F. Supp. 2d 296, 308-09 (D. Conn. 2001) (antitrust action not compulsory as it involves distinct factual issues and facts that arose after filing of prior action); *Gasswint v. Clapper*, 17 F.R.D. 309, 313 (W.D. Mo. 1955) ("[a] claim for treble damages under the Sherman Act is separate and distinct from any transaction that is involved in an infringement suit, and, being so, it is a permissible counterclaim, by classification under Rule 13(b), which is not lost if not asserted in the infringement action, even if then subsisting"); Herbert Hovenkamp, Mark D. Janis, Mark A. Lemley, *IP and Antitrust*, *Antitrust Allegations as Compulsory Counterclaims in Enforcement Litigation* §5.5 n.16 (2005) ("when no arguable factual or legal basis existed for the counterclaim until after the original pleading deadlines have expired, courts should allow late filing of the counterclaim"); Teague I. Donahey, *Antitrust Counterclaims in Patent Infringement Litigation: Clarifying the Supreme Court's Enigmatic* Mercoid *Decision*, 39 IDEA J. L. & Tech. 225 (1999) (arguing for analysis under logical relationship test and predicting many will be properly treated as permissive).

Here, this conclusion is reinforced because, on August 2, 2010, this Court ordered all claims to be tried starting January 11, 2011, with the express statement that no continuance would be allowed (Dkt. 8434).  Trial of this complex antitrust case could not reasonably have been accomplished within that short span:

- Wholly apart from the *res judicata*/compulsory counterclaim questions, an antitrust case which alleges "sham" litigation issues will produce a motion to dismiss on *Noerr* and the substantive elements.
- No discovery has been conducted on the litany of antitrust issues including:
  - definition of relevant product and geographic markets;
  - Mattel's share of that market, an issue often addressed by issuing subpoenas to industry participants, forcing disclosure of their sales data and related information, which often requires judicial resolution of objections, frequently in distant forums where the recipients of the subpoena reside;
  - whether there are entry/expansion barriers sufficient to satisfy the standards established by case law.
- The search for and retention of expert witnesses on both liability and damage issues;
- The time needed by experts to absorb the subjects and data on which they will testify;
  - the writing of expert reports and the taking of expert depositions;
  - whether Mattel's seeking and achieving the constructive trust remedy was the proximate cause of injury to MGA;
  - whether Mattel's seeking and achieving the constructive trust remedy was a monopolizing act in violation of Section 2 of the Sherman Act;
  - whether Mattel's seeking and achieving the constructive trust remedy satisfies the requirement of "antitrust injury" established by case law;
  - whether MGA sustained quantifiable damage as a result of the constructive trust remedy; and
- Law and motion activity related to discovery matters, summary judgment filings, and other disputed issues.

These tasks could not have reasonably or competently been conducted and prepared

17

by either side in the period from August 16, 2010 to January 11, 2011.  The addition of the antitrust case into the underlying litigation at any time before the August 2011 judgment in MGA's favor was completely impracticable.  The effect of treating this antitrust case as a compulsory counterclaim is to shorten the four-year statute of limitations to less than thirty days.

According to the Institute for the Advancement of the American Legal System, Civil Case Processing in the Federal District Courts: A 21st Century Analysis, Appendix E, at 99 (2009), *available at* http://www.du.edu/legalinstitute/pubs/ PACER%20FINAL%201-21-09.pdf, the average time from filing to disposition of a federal antitrust case is 531.7 days, or almost 18 months exactly.  This number includes cases terminated early by motions to dismiss or summary judgment or settlement.  This statistic confirms the impracticability of doing a complex case such as this in less than five months.  Even if filed, the antitrust claim would almost surely have resulted in a severance and stay to permit the underlying case to move forward through trial to verdict.  That would have placed Mattel in exactly the same posture as now exists.  Accordingly, Mattel suffers absolutely no prejudice by reason of the later filing.

Moreover, this Complaint relies on continuing conduct and developments throughout the pendency of the trial, jury verdict, judgment, and post-trial motions in the underlying case.  Substantial new evidence and legal developments supporting MGA's antitrust Complaint have occurred after the filing and continue to occur throughout the pendency of the underlying suit.  Most notably, that Mattel pursued a case for seven years and $400 million dollars and lost on every count and is still appealing the judgment!

Applying either the "same transactional nucleus" or "logical relationship" test will not change the fact that this Complaint arises from new conduct subsequent to the existing case, presents entirely different factual and legal questions, and would have needlessly complicated, confused, delayed, and burdened the existing trial.  As a

permissive counterclaim, the antitrust claim did not have to be filed in the underlying litigation which forms the predicate for this Complaint. The antitrust claim did not have an arguable factual and legal basis until a very advanced stage of the underlying proceedings, and did not fully ripen until MGA secured a favorable verdict and judgment in August 2011.

Furthermore, this case is being heard by the same judge as a related action. The Court is intimately familiar with the facts, evidentiary findings, and rulings of the prior case. The present case is suitably positioned for the Court to manage to best serve judicial economy and efficiency considerations. "In many cases even if the antitrust counterclaim were asserted by counterclaim, the court would sever the issues and resolve the infringement case first." *Hydranautics*, 70 F.3d at 536. Courts have "broad" discretion to "dissect complicated trials into manageable sections." *Alarm Device Mfg. Co. v. Alarm Prods. Int'l, Inc.*, 60 F.R.D. 199, 201 (E.D.N.Y. 1973).

A number of reasons warrant a separate trial for this antitrust case: (1) it involves different factual, evidentiary, and legal issues, documentary proof, and witnesses; (2) consideration of all the claims at a single trial is unduly burdensome on the Court and jury; (3) antitrust involves a highly specialized and complex body of law, intensive fact and expert discovery requirements, and frequently protracted trials; (4) separate counsel have been retained by MGA to try the antitrust claim, and a separate trial serves to economize counsel's time. *See id.* at 202; *Henan Oil Tools, Inc. v. Eng'g Enters., Inc.*, 262 F. Supp. 629, 630-32 (S.D. Tex. 1966). Judicial economy, convenience, practical considerations, and fairness favor a severance of the claims. Accordingly, the Complaint is properly brought as a separate, stand-alone case.

## III.   *Noerr-Pennington* Does Not Immunize Mattel's Anticompetitive Conduct

*Noerr-Pennington* is inapplicable here because MGA's injury resulted from conduct which the doctrine does not protect. The Supreme Court has held that "'it has never been deemed an abridgment of freedom of speech or press to make a course of

19

1  conduct illegal merely because the conduct was in part initiated, evidenced, or carried

2  out by means of language, either spoken, written, or printed.'"  *Cal. Motor Transp.*

3  *Co. v. Trucking Unlimited*, 404 U.S. 508, 514, 92 S. Ct. 609, 613 (1972) (citation

4  omitted).  MGA's case does not arise from Mattel's <u>*genuine*</u> petitioning activity

5  because Mattel knew its case was statute-barred, made misrepresentations to the court,

6  and sought baseless remedies.  *See United States ex rel. Wilson v. Maxxam, Inc.*, 2009

7  U.S. Dist. LEXIS 14375, at *17-*25 (N.D. Cal. 2009) (Wilkin, J.) (no *Noerr*

8  immunity for misrepresentations); *EcoDisc Tech. AG v. DVD Format/Logo Licensing*

9  *Corp.*, 711 F. Supp. 2d 1074, 1081 (C.D. Cal. 2010) (Pfaelzer, J.); *Cal. Pharmacy*

10  *Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1167-68 (C.D. Cal. 2009)

11  (Carter, J.).

12       Instead, MGA's case arises from Mattel's anticompetitive course of conduct

13  engaged in to maintain Mattel's monopoly and unlawfully exclude a competitor from

14  the market.  The Complaint demonstrates that Mattel used its monopoly power to

15  foreclose competition, to unlawfully gain a competitive advantage, and to destroy a

16  competitor, all in violation of the antitrust laws.  *See Otter Tail Power Co. v. United*

17  *States*, 410 U.S. 366, 377, 93 S. Ct. 1022, 1029 (1973); *Eastman Kodak Co. v. Image*

18  *Tech. Servs.*, Inc., 504 U.S. 451, 482-83, 112 S. Ct. 2072, 2090 (1992).

19       **A.    Mattel's Conduct is Sham and Mattel Knew It Had No Basis to Use**
20             **Abusive Litigation to Exclude MGA from the Market**

21       MGA has alleged sufficient facts to demonstrate that Mattel's alleged

22  petitioning activity is not objectively reasonable or genuine but sham.  *See Noerr*,

23  365 U.S. at 144.  The Complaint outlines in great detail that Mattel has developed

24  and ruthlessly deployed a costly, lengthy "litigate MGA to death" strategy, pursued a

25  case that it knew was statute-barred, pursued remedies that it knew lacked merit, and

26  made material misrepresentations to the Court to accomplish its anticompetitive

27  objective.  FAC ¶¶ 48-79.  The Complaint alleges that Mattel's abusive litigation is

28  objectively baseless and is specifically intended to interfere directly with MGA's

business relationships through the <u>use</u> of the governmental process – as opposed to

20

the <u>outcome</u> of that process – as an anticompetitive weapon.  *See PRE*, 508 U.S. at 60-61, 113 S. Ct. at 1928-29 (setting forth sham test); *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1059-63 (9th Cir. 1998) (broader sham exception in judicial arena).

Indeed, the Ninth Circuit agreed and vacated the copyright injunction and the "very broad constructive trust" that it found was "overwhelmingly" comprised of MGA's own "sweat equity." *Id.* ¶¶ 18-23 (quoting *Mattel*, 616 F.3d at 910-18). Finding that the jury instructions contained "several" errors, the Ninth Circuit recommended that the trial court further consider the damage award upon remand. The Ninth Circuit recognized:

> Because several of the errors we have identified appeared in the jury instructions, it's likely that a significant portion – if not all – of the jury verdict and damage award should be vacated, and the entire case will probably need to be retried.

*Mattel*, 616 F.3d at 917-18.  In light of Mattel's blatant disregard of the applicable law and facts, and the Ninth Circuit's wholesale reversal under an abuse of discretion standard (and the subsequent jury verdict and judgment in MGA's favor), MGA has readily satisfied the pleading requirements sufficient to state sham.

> It is not equitable to transfer this billion dollar brand – the value of which is overwhelmingly the result of MGA's legitimate efforts – because it may have started with two misappropriated names.  The district court's imposition of a constructive trust forcing MGA to hand over its sweat equity was an abuse of discretion and must be vacated.

*Mattel*, 616 F.3d at 911; *see also* Dkt. 8423 at 40:4-11.

The jury and this Court after retrial agreed as well.  *See* Dkt. 10518.  After the April 21, 2011 verdict, Mattel's investment analysis report states:

- Mattel loses Bratz trial – earlier this morning a California federal jury reportedly sided w/ MGA Entertainment (the defendant), awarding no damages or ownership of the Bratz doll to Mattel (MAT, $26.70, Buy).
- ***Outcome is less relevant*** in our opinion – 1) ***a Bratz "win" was never part of our model or thesis*** . . .

1  Drew E. Crum, *Mattel Loses Bratz Trial*, Stifel, Nicolaus & Co., Apr. 21, 2011
2  (emphasis added).  Incredibly, this piece speaks to Mattel not even being concerned
3  with the <u>outcome</u>; all that it cared about was <u>use</u> and abuse of the litigation process to
4  destroy its only significant fashion doll competitor.

5      In sum, Mattel's claims against MGA are objectively unreasonable,
6  inconsistent with facts and legal authority known to Mattel, and were made baselessly
7  and in bad faith to crush its smaller rival.  Mattel knew the claims and remedies they
8  sought had no legal merit and could not be supported under established law.  *See*
9  *Mattel*, 616 F.3d at 909-18; Dkt. 8423 at 40:4-11; Dkt. 10518.  What is in fact at play
10 here is Mattel's attempt to use its overwhelming market dominance to apply pressure
11 to MGA, to squash Bratz, and to eliminate competition in the relevant market.

12      **B.    The Ninth Circuit's Opinion, the Jury's April 2011 Verdict, and
13              This Court's August 2011 Judgment in MGA's Favor Are Evidence
                of Sham Litigation and Mattel's Anticompetitive Motive**

14      Courts approach sham claims by independently "attempting to assess the
15 objective legal merit of the predicate suit."  *Boulware v. Nev. Dep't of Human Res.*,
16 960 F.2d 793, 797 (9th Cir. 1992).  Success or failure on the merits is not dispositive
17 but an "important factor to be considered under the sham inquiry."  *Id.* at 798; *Aydin*
18 *Corp. v. Loral Corp.*, 718 F.2d 897, 903 (9th Cir. 1983) ("might be helpful as one
19 indication" of intent); *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 841 (9th Cir.
20 1980) (not the "sole criterion").  As the Ninth Circuit expressly states in *Boulware*,
21 relied on by Mattel:

22      Both the initial success on the merits and the subsequent reversal are
        relevant to the inquiry but neither factor is determinative.  The court
23      hearing the antitrust claim must make it own assessment of the
24      objective merits of the predicate suit and decide whether it was intended
        to inflict anticompetitive injury through the legal process or by virtue of
25      the legal outcome.

26 *Boulware*, 960 F.2d at 799.

27      This case is also distinguishable from *Boulware*, which was a summary
28 judgment ruling rather than a motion to dismiss, because the court found there was

1   "no evidence" that the defendant sought to keep the plaintiff from competing in the

2   market by the maintenance of the suit and there was "no reason to believe [the

3   defendant] participated in the case regardless of the outcome or without a legitimate

4   expectation of success on the merits." *Id.* at 800.  "This is not a case where the

5   antitrust defendant could have used the lawsuit as a tool to impose costs and delay, to

6   tarnish the reputation of a competitor, or to cripple its adversary's ability to obtain

7   needed financing." *Id.*  Here, by contrast, that is precisely what MGA has alleged

8   Mattel did (FAC ¶¶ 80-83), this is precisely what has in fact happened seven years,

9   hundreds of millions of dollars, and two trials later, as the Ninth Circuit properly

10  recognized:

> Barbie was the unrivaled queen of the fashion-doll market throughout
> the latter half of the 20th Century.  But 2001 saw the introduction of
> Bratz . . . and Bratz became an overnight success.  Mattel, which
> produces Barbie, didn't relish the competition.

14  *Mattel*, 616 F.3d at 907.

15      Moreover, a single baseless claim within a complaint can serve as grounds for

16  a sham litigation claim.  *MCI Communications Corp. v. Am. Tel. & Tel. Co.*, 708

17  F.2d 1081, 1154-55 (7th Cir. 1983); *Clipper Exxpress v. Rocky Mtn. Motor Tariff*

18  *Bureau, Inc.*, 690 F.2d 1240, 1254-56 (9th Cir. 1982); *Novelty, Inc. v. Mountain View*

19  *Mktg., Inc.*, No. 07-1229, 2010 U.S. Dist. LEXIS 30783, at *2 n.2 (S.D. Ind. Mar. 30,

20  2010) (observing that "a single claim, lawsuit or petition can be 'sham litigation'

21  actionable under the antitrust laws" and the issue of sham litigation "requires a claim-

22  by-claim analysis"); *In re Wellbutrin SR Antitrust Litig.*, 749 F. Supp. 2d 260, 263-67

23  (E.D. Pa. 2010).  In *Intel Corp. v. Via Techs., Inc.*, No. 99-03062, 2001 WL 777085

24  (N.D. Cal. Mar. 20, 2001), the court did not resolve the issue at the pleading stage,

25  noting that "[d]iscovery may reveal that the incremental effects of the supposed sham

26  components were negligible or may show that they dominated the original

27  complaint." *Id.* at *6.

28      As well-pled in the Complaint, the damages that MGA properly seeks flow

23

1   from Mattel's abusive and sham litigation, as part and parcel of its wide array of

2   tortious and monopolistic conduct, to eliminate MGA and to suppress competition in

3   the market.  *See, e.g., Intel*, 2001 WL 777085 at *4 (sham litigation qualifies as

4   predatory act; may have discouraged customers and potential customers from doing

5   business with plaintiff by casting a cloud over legality of its product line).  The

6   pleadings allege, and the evidence will cogently demonstrate, that Mattel's knowing

7   inducement of Judge Larson to commit legal error – resulting in reversal under an

8   abuse of discretion standard – by effectively awarding Bratz in perpetuity to Mattel

9   spelled the death knell for Bratz as a brand and possibly for MGA as an entity.  *See*

10   FAC ¶¶ 80-83, 98-99, 109-10.  The Sherman Act clearly provides a claim for damages

11   based upon such anticompetitive conduct.

12       **C.    The Parties' Factual Dispute is for the Trier of Fact to Resolve**

13       At the very least, the "sham" issue presents a question of fact unsuitable for a

14   motion to dismiss.  The Ninth Circuit explained that to prove sham, the plaintiff "need

15   only show there is a genuine issue of material fact to avoid summary judgment."

16   *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1044 (9th Cir.

17   2009); s*ee also Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1036-38 (C.D.

18   Cal. 2007) (finding plaintiff sufficiently stated claim of sham litigation to overcome

19   motion to dismiss) ("The Ninth Circuit has stated that '[w]hether something is a

20   genuine effort to influence governmental action, or a mere sham, is a question of

21   fact.'") (quoting *Clipper Exxpress*, 690 F.2d at 1253 (9th Cir. 1982); *In re Wellbutrin

22   SR Antitrust Litig*., 2006-1 Trade Cas. (CCH) ¶ 75,158, at 104,250-53 (E.D. Pa. March

23   14, 2006) (denying motion to dismiss on sham issue); *In re Relafen Antitrust Litig*.,

24   346 F. Supp. 2d 349, 361-62 (D. Mass. 2004) (denying summary judgment because

25   claim of objective baselessness presented fact issues); *Hoffman-La Roche Inc. v.

26   Genpharm Inc*., 50 F. Supp. 2d 367, 380 (D.N.J. 1999) (declining to find *Noerr-

27   Pennington* immunity because "[r]easonableness is a question of fact, and the Court

28   cannot make such factual determinations on a factual controversy roiled by a motion

1  to dismiss").

2       Here, the allegations and the law of the case (upon which the Court may
3  properly take judicial notice) overwhelmingly show Mattel's objective baselessness
4  and improper motive because Mattel had no reasonable basis to believe it could
5  lawfully exclude MGA from the market.  Alternatively, at the very least, serious
6  disputed issues of fact exist.[5]  MGA's allegations are to be presumed true and viewed
7  in the light most favorable to MGA.  Moreover, where the facts are disputed, as here,
8  the fact finder makes the determination on objective reasonableness.[6]

9       Mattel contends that its false, untimely, overbroad assertion of ownership of
10  MGA's "sweat equity" requires this Court to dismiss MGA's Complaint outright.  If
11  this is the law, then MGA will be deprived of any opportunity to seek a fair resolution
12  of its dispute on the merits, and the monopolist Mattel will have succeeded in its
13  unlawful interference and abuse of the litigation process.  As demonstrated by the
14  allegations, Mattel's lawsuit was sham and objectively baseless, has been decisively
15  rejected by the Ninth Circuit, the jury, and this Court.  Neither Mattel nor any
16  reasonable litigant could realistically have expected to secure favorable relief, much
17  less the Draconian and "incorrect" relief initially granted at Mattel's insistence by
18  Judge Larson.

19

20

21  _____
22  [5] *See Flowers v. Carville*, 310 F.3d 1118, 1130-31 (9th Cir. 2002).  MGA's Complaint plainly alleges sham to overcome Mattel's motion to dismiss.  Even at summary judgment, sham must be proved only by a preponderance of the evidence,
23  not clear and convincing evidence. *Litton Sys., Inc. v. AT&T*, 700 F.2d 785, 813-14 (2d Cir. 1984) (finding "no reason to impose any higher burden of proof").
24  [6] *See, e.g., PRE*, 508 U.S. at 63 ("there is no dispute over the predicate facts of the underlying legal proceeding"); *Nelson v. Miller*, 227 Kan. 271, 277-78 (1980), *cited*
25  *in PRE*, 508 U.S. at 63 ("it becomes the duty of the trial court to submit the question to the jury" when the facts are in dispute); *Stewart v. Sonneborn*, 98 U.S. 187, 194
26  (1878), *cited in PRE*, 508 U.S. at 62 (duty of court to submit issue of credibility of evidence to jury); Restatement (Second) of Torts § 673 cmt. e (deciding disputed
27  issues of fact clearly remains function of jury); *cf. Wyatt v. Cole*, 504 U.S. 158, 173-74 (1992) (Kennedy, J., concurring) ("It seems problematic to say that a defendant
28  should be relieved of liability under some automatic rule of immunity if objective reliance upon a statute is reasonable but the defendant in fact had knowledge of its invalidity.").

**IV.    MGA Has Properly Alleged an Antitrust Violation**

      **A.    MGA Has Properly Alleged Relevant Market**

      The "definition of the relevant market is a factual inquiry for the jury" and is not a proper grounds for dismissing the Complaint. *Rebel Oil Co v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1476 (9th Cir. 1997), *aff'd on other grounds*, 525 U.S. 299, 119 S. Ct. 710 (1999). Defining the relevant market "is a factual inquiry for the jury; the court may not weigh evidence or judge witness credibility." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989). The proper relevant market definition "can be determined only after a factual inquiry into the 'commercial realities' faced by consumers." *Kodak*, 504 U.S. at 482, 112 S. Ct. at 2090 (citation omitted); *see Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 993 (9th Cir. 1986); *Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d Cir. 2001) (Sotomayor, J.) ("market definition is a deeply fact-intensive inquiry"). Expert testimony is appropriate to help define the relevant markets. *Cal. Steel & Tube v. Kaiser Steel Corp.*, 650 F.2d 1001, 1003-04 (9th Cir. 1981). "An antitrust complaint therefore survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect. And since the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1045 (9th Cir. 2008).

      MGA has alleged a recognized and unique category of product in which both Mattel and MGA compete in the market: fashion dolls. MGA has stated facts sufficient to show why fashion dolls are distinct from other types of toys. *See* FAC ¶ 102. Indeed, Mattel's damage expert, Michael Wagner, admitted in his trial testimony that fashion dolls comprise a separate market:

      I believe they [Mattel] had a legal monopoly at that point in time [beginning of damages period], yes.

3/8/11 (Vol. 2) TT at 69:14-15.

> Q.      . . . the one thing that Barbie and Bratz both have in common . . . we can all agree on is that they are both fashion dolls.
>
> A.      I think everyone would agree to that, yes.
>
> Q.      And they were both sold in the fashion doll market?
>
> A.      Yes.

*Id*. at 71:20-25.  Mattel CEO and Chairman Robert Eckert similarly admitted that fashion dolls compete in a separate and distinct product market.

> A.      They [other fashion dolls] might do reasonably well for a fairly short period of time, but Barbie still, in the year 2000, had a 90 percent share of the fashion doll subcategory, if you will, something like that.

3/1/11 (Vol. 2) TT at 15:11-14.

> A.      Well, in the early years of the 2000s, 2000 or 2001, Barbie had approximately a 90% share of the fashion doll category.

*Id*. at 22:13-16.

The Complaint states: "The relevant product market is fashion dolls, which are dolls in the 9-12" tall range and which are designed to be dressed with fashion clothes and accessories."  *Id*.  MGA then explains the basis for alleging fashion dolls as a distinct and unique market, including recognition within the toy industry and lack of reasonable interchangeability among consumers.  *Id*.

The test of that market definition must await the development of evidence and then summary judgment or trial.  *See Newcal*, 513 F.3d at 1045.  The Court should not decide this fact-intensive issue on the face of the pleadings.  The Supreme Court and the Ninth Circuit have repeatedly approved sub-set market definitions which consist of less than the total general product market.  *Syufy*, 793 F.2d at 994 (approving market definition comprised of only first-run, high-grossing films); *Int'l Boxing Club of N.Y., Inc. v. United States*, 358 U.S. 242, 252, 79 S. Ct. 245, 251 (1959) (approving market definition limited to championship boxing); *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1393 (9th Cir. 1984) (approving market defined as

1  professional football as distinguished from other football or other sport, recreation,

2  and entertainment options).

3  Similarly, the United States is an appropriate geographic market.  First,

4  relevant geographic market definition is a paradigm factual issue for the jury to decide

5  after a full trial.  *Newcal*, 513 F.3d at 1045; *Forsyth*, 114 F.3d at 1476; *Am. Ad Mgmt.,*

6  *Inc. v. GTE Corp.,* 92 F.3d 781, 790 (9th Cir. 1996) ("factual inquiry").  Indeed, the

7  Fourth Circuit recently reversed dismissal on the district court's erroneous conclusion

8  that the geographic market must be expanded to include the areas where the sellers

9  operate and produce, *i.e.*, the world.  *E.I. du Pont de Memours & Co. v. Kolon Indus.,*

10  *Inc.,* 637 F.3d 435, 441-48 (4th Cir. 2011) (collecting and analyzing cases).  "*RCM*

11  *Supply*, *Brown Shoe*, *Pabst Brewing*, *Dentsply*, and other cases demonstrate that, in

12  defining the relevant geographic market in an antitrust case, plaintiffs are not required

13  to include supplier headquarter or other sites without regard to whether consumers can

14  predictably turn to those places for supply."  *Id*. at  447.  After a detailed analysis, the

15  Fourth Circuit held that "Kolon pled a relevant geographic market—the United

16  States" which was subject to "a fact-intensive inquiry" and, therefore, dismissing the

17  pleading on its face was error.  *Id*.[7]

18  MGA has properly alleged a geographic market limited to fashion dolls sold in

19  the United States.

20  **B.   Mattel's Dominant Market Power is Undisputed**

21  Market power is defined as the defendant's "power to control prices or exclude

22

23  [7] The Foreign Trade Antitrust Improvement Act of 1982 (15 U.S.C. § 6a) precludes
    application of the Sherman Act to foreign commerce unless: (1) the foreign conduct

24  has a "direct, substantial, and reasonably foreseeable" effect on domestic U.S.
    commerce or export commerce; and (2) the "direct, substantial, and reasonably

25  foreseeable" effect on U.S. commerce must "give rise to" the Sherman Act claim.
    Here, fashion dolls are mostly manufactured outside the United States and it would

26  likely be difficult to meet these standards.  "[T]he antitrust laws do not extend to
    protect foreign markets from anticompetitive effects.  Although plaintiff alleges that

27  defendants' conduct had an impact on both the 'world-wide' market and the United
    States domestic market, for the purposes of standing, i.e., applying the *Associated*

28  *General Contractors* factors), the 'relevant market' must be the domestic market."
    *Galavan Supplements, Ltd. v. Archer Daniels Midland Co*., 1997 U.S. Dist. LEXIS
    18585, at *11 (N.D. Cal. Nov. 19, 1997).

competition" in the relevant market.  *United States v. E. I. du Pont de Nemours & Co.*,
351 U.S. 377, 391 (1956); *Kodak*, 504 U.S. at 481.  Market power can be shown
through either direct or circumstantial evidence.  It may be proven directly with
evidence of "injury to competition which a competitor with market power may inflict,
and thus, of the actual exercise of market power."  *Rebel Oil*, 51 F.3d at 1434.
Moreover, the "[c]onvergence of injury to a market competitor and injury to
competition is possible when the relevant market is both narrow and discrete and the
market participants are few."  *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884
F.2d 504, 508-09 (9th Cir. 1989).  Market power may also be proven by the surrogate
method of market share.  *Image Tech. Servs., Inc. v. Eastman Kodak Co.,* 125 F.3d
1195, 1206 (9th Cir. 1997) ("A dominant share of the market often carries with it the
power to control output across the market, and thereby control prices.").  A market
share of 65% is generally sufficient to establish monopoly power.  *See Hunt-Wesson
Foods, Inc. v. Ragu Foods, Inc*., 627 F.2d 919, 925 (9th Cir. 1980).  Finally, in order
to establish market power, a plaintiff need not prove that all of the other market
participants have been run out of the market.  *See Brunswick Corp. v. Pueblo Bowl-O-
Mat, Inc*., 429 U.S. 477, 489 n.14 (1977) (plaintiff can prove antitrust injury and
violation before it is actually "driven from the market").  What MGA must and has
alleged is that Mattel had the "power to exclude *competition* from the relevant market
generally."  *See Los Angeles Land Co. v. Brunswick Corp*., 6 F.3d 1422, 1426 (9th
Cir. 1993).

　　　Mattel had the power to exclude and exercised that power to exclude MGA's
competing products from the market, indisputably reducing output.  This
uncontroverted exclusion of MGA's Bratz from the market by Mattel provides
justiciable evidence of market power.[8]

---

[8] *See NCAA v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 109 (1984) ("As a
matter of law, the absence of proof of market power does not justify a naked
restriction on price or output."); *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435
U.S. 679, 692 (1978); *Ind. Fed'n of Dentists v. FTC*, 476 U.S. 477 (1986); *Rebel Oil*,
51 F.3d at 1434; *Mercy-Peninsula Ambulance, Inc. v. County of San Mateo*, 791
F.2d 755, 758 (9th Cir. 1986); *K.M.B. Warehouse Distribs. v. Walker Mfg. Co.*, 61

29

Using the surrogate test of market share, Mattel is well beyond minimum monopoly numbers. "Since 1959, Barbie had been, by a wide margin, the dominant fashion doll in the world, enjoying overwhelming market share and shattering all potential competition." FAC ¶ 47. Mr. Eckert and Mr. Wagner's trial testimony include such judicial admissions attesting to Mattel's monopoly power. *See* 3/1/11 (Vol. 2) TT at 15:11-14, 22:13-16; 3/8/11 (Vol. 2) TT at 69:14-15, 71:20-25.

In this Court's August 2, 2010 Order, the Court observes that Judge Larson's "order imposing the constructive trust was invalid, because it was overbroad and predicated upon verdicts that were reached after improper instruction." Dkt. 8423 at 40:4-11. Judge Larson's order and erroneous instructions were wrongfully solicited by Mattel, knowing they would not withstand appellate scrutiny for the singular purpose of killing Bratz as a brand. *See* FAC ¶¶ 57, 65-66, 81-83. And Mattel has accomplished that objective.

During Mattel's first quarter 2011 earnings call, Mr. Eckert stated:

> The Barbie brand really led the way for Mattel in the first quarter, particularly in international markets. Barbie achieved the highest first quarter sales, gross sales, since 2004, and it's the first time the brand has had double-digit sales growth in the first quarter since 1997. The brand is strong, global retailers' support is good and the momentum continues. Brands like Monster High and Disney Princess also were standouts in the quarter.[9]

---

F.3d 123, 129 (2d Cir. 1995) ("If a plaintiff can show an actual adverse effect on competition, such as reduced output . . . we do not require a further showing of market power.") (citing *Capital Imaging Assoc., P.C. v. Mohawk Valley Med. Assoc., Inc*., 996 F.2d 537, 546 (2d Cir. 1993) (plaintiff may avoid "'detailed market analysis' by "'offering proof of actual detrimental effects, such as a reduction of output'"")).

[9] Mattel's CEO Discusses Q1 2011 Results – Earnings Call Transcript, Apr. 15, 2011, *available at* http://seekingalpha.com/article/263798-mattel-s-ceo-discusses-q1-2011-results-earnings-call-transcript?source=feed; *see also* Mattel Loses Bratz Trial, Stifel, Nicolaus & Co., Apr. 21, 2001 ("we est. Mattel already controls at least 80% of the fashion doll category (domestic w/ Barbie), Disney Princess, and Monster High, while the Bratz domestic share is in the (est.) low/mid single-digits range"); Mae Anderson, Toy Sales Rise 2 Percent in 2010, NPD Group Says, Bloomberg, Jan. 27, 2011, available at http://www.bloomberg.com/news/2011-01-27/toy-sales-rise-2-percent-in-2010-npd-group-says.html (Barbie among best-selling toys in 2010; dolls and infant and preschool toys rose 6 percent). Under Federal Rule of Evidence 201, the Court may take judicial notice of these facts because they are not subject to reasonable dispute and their accuracy cannot reasonably be

1  As the Ninth Circuit aptly noted, Mattel's "Barbie was the unrivaled queen of
2  the fashion-doll market throughout the latter half of the 20th Century." *Mattel*, 616
3  F.3d at 907, *quoted at* FAC ¶ 48.  The Ninth Circuit further found that the copyright
4  injunction that Mattel sought and obtained was erroneous and not based on
5  "appropriate findings" and so it "therefore vacate[d] the copyright injunction."
6  *Mattel*, 616 F.3d at 916-18.  Describing the error as "significant," the Ninth Circuit
7  stated: "Mattel can't claim a monopoly over fashion dolls with a bratty look or
8  attitude, or dolls sporting trendy clothing – these are all unprotectable ideas." *Id*. at
9  916.  The Ninth Circuit aptly concluded: "America thrives on competition; Barbie, the
10 all-American girl, will too." *Id.* at 918.  The Ninth Circuit's language in the opinion
11 giving rise to this antitrust case is clear: Mattel has the requisite monopoly power in
12 the fashion doll market.

13  Based either on the actual exclusion of MGA's fashion dolls from the market
14 (reduced output) or Mattel's overwhelming share of the fashion doll market, MGA has
15 properly alleged monopoly power such that a reasonable jury could find that Mattel
16 possessed monopoly power.

17  **C.    Substantial Barriers to Entry into the Market Exist**

18  The Ninth Circuit has adopted the Areeda-Hovenkamp standard of entry
19 barriers: entry barriers may consist of "factors in the market that deter entry while
20 permitting incumbent firms to earn monopoly returns."  Areeda & Hovenkamp,
21 *Antitrust Law*, 409 at 509-10 (1992 Supp.).  Intellectual property rights, maintenance
22 of a high market share, and control of superior resources, all described below, are
23 considered barriers to entry sufficient to support a claim of monopolization.  *Kodak*,
24 125 F.3d at 1208.  Moreover, small entries into the market without growing or
25 sustaining a significant market share do not signify "a breakdown of barriers to entry."
26 *Oahu Gas Serv., Inc. v. Pac. Res., Inc*., 838 F.2d 360, 367 (9th Cir. 1988).

27  Numerous undisputed factors that deter entry into the fashion doll market

28

questioned.  Mr. Eckert's statement is an admission by a party-opponent.  Fed. R.
Evid. 801(d)(2).

31

include: (1) Barbie accounts for the predominant share of fashion dolls sold over a significant period of time (*see* FAC ¶ 48); (2) Mattel has repeatedly, continually, and falsely asserted ownership of Bratz; (3) Mattel has used its market power to keep out competition; (4) significant up-front capital investment would be required to penetrate the fashion doll market; (5) time-lag in developing a reputation such that an entrant's fashion dolls can be successfully marketed to buyers; (6) patents, trademark, trade dress, copyright and other intellectual property rights relating to fashion dolls; (7) need for access to a nationwide sales and distribution network; and (8) exclusive dealing contracts already in place. FAC ¶ 107.

Given Barbie's significance to the fashion doll market, and Mattel's control of a high market share, and given Mattel's assertion of control over Bratz as evidenced by its years-long, multimillion dollar litigation against MGA, Mattel clearly has control over a resource necessary for effective competition, has deterred entry, and has enjoyed monopoly returns. This control, partly achieved by copyright, operates as an impediment to competition. Moreover, Mattel has maintained – because of its control of these superior resources – a high market share. Indeed, in the opening statement at trial in the Mattel litigation, Mattel's attorney, John B. Quinn, Esq., told the jury: "Until Bratz, there was only one fashion doll in the market and that was Barbie." *See* FAC ¶ 106; *see also* 1/18/11 (Vol. 1) TT 16:18-25 (admitting that Barbie has been the world's favorite doll for generations). Mattel's decision to destroy a competitive product and company also operates as a barrier to new entrants who will observe how MGA was treated (punished) by Mattel for its competitive fashion doll. Accordingly, entry barriers exist to deter effective competition.

### D.   MGA Has Shown Anticompetitive Effect and a Dangerous Probability of Monopolization

Section 2 of the Sherman Act prohibits a monopolist from employing even lawful practices if they unreasonably exclude or foreclose competition to existing or potential competitors in the relevant market. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608-11, 105 S. Ct. 2847, 2860-61 (1985). A defendant's

1  behavior may fairly be characterized as "predatory" when the defendant is

2  "'attempting to exclude rivals on some basis other than efficiency.'"  *Id.* at 605, 105 S.

3  Ct. at 2859 (citation omitted).  Actions restricting consumer choice are inherently

4  anticompetitive (*see, e.g., Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council*

5  *of Carpenters*, 459 U.S. 519, 528, 103 S. Ct. 897, 903 (1983); *Theme Promotions, Inc.*

6  *v. News Am. Mktg. FSI,* 546 F.3d 991, 1004 (9th Cir. 2008); *Ross v. Bank of Am.,* 524

7  F.3d 217, 224 (2d Cir. 2008); *Sullivan v. NFL,* 34 F.3d 1091, 1101 (1st Cir. 1994)), as

8  is conduct which constitutes a "deliberate effort to discourage [a defendant's]

9  customers from doing business with its smaller rival." *Aspen*, 472 U.S. at 610, 105 S.

10  Ct. at 2861; *accord Kodak*, 504 U.S. at 482-83, 112 S. Ct. at 2090.

11          Here, in addition to describing the crippling injury to MGA's business as a

12  result of Mattel's monopolistic conduct, MGA has alleged injury to competition

13  generally.  MGA has alleged that Mattel is attempting to protect the Barbie brand and

14  ultimately to maintain Barbie monopoly in the fashion doll market.  FAC ¶¶ 106.

15  MGA has further alleged that Mattel "specifically intended to eliminate MGA as a

16  competitor in the fashion doll market, long dominated and controlled by Mattel's

17  Barbie, so that Mattel could reacquire and maintain a monopoly in the fashion doll

18  market in the United States." *Id.*  ¶ 30.

19          MGA also alleges that "Mattel's scheme and strategy to monopolize the above-

20  described trade and commerce have been done with the specific intent of eliminating

21  competition in general, and the specific competition of MGA, in the fashion doll

22  market." *Id.* ¶ 105.

23          Finally, MGA has alleged that Mattel's conduct has harmed and will continue

24  to harm competition by limiting consumer choice, lowering quality, increasing prices,

25  restricting competition, raising entry barriers, restricting consumer access to

26  competitive products, limiting innovation by depriving competitors of their ability to

27  compete, and restraining the market for developing and selling MGA's products. *See*

28  *id.* ¶¶ 106-08.

Mattel ignores Supreme Court and Ninth Circuit decisions when it contends that the elimination of MGA's Bratz (and other dolls such as 4-Ever Best Friends) is too insignificant to satisfy the anticompetitive element of monopolization. The Supreme Court condemned a scheme which limited the ability of a single retailer in San Francisco to compete in the sale of household appliances. *Klor's Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 213 (1959) (scheme "is not to be tolerated merely because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy"). Similarly, the Ninth Circuit declared that the "elimination of a single competitor may violate [the Sherman Act] if it harms competition."[10] The Third Circuit agrees.[11]

Here, the undisputed facts are that Mattel prevented the sale of a competitive product and destroyed the value of a competitive company by pursuing scorched earth, baseless litigation as an anticompetitive business objective. The exclusionary conduct must be viewed in the light of Mattel's crusade to eliminate competition. Mattel's anticompetitive conduct is intended to protect and maintain Mattel's monopoly power in the relevant market to the detriment of competition, consumers, and MGA. Accordingly, the allegations set forth sufficient facts from which a jury could reasonably and competently find that Mattel's conduct in suppressing the competitive threat constituted anticompetitive conduct and that Mattel intended it to accomplish an anticompetitive objective.

---

[10] *Rebel Oil*, 51 F.3d at 1433; *see also E.W. French & Sons, Inc. v. Gen. Portland, Inc.*, 885 F.2d 1392, 1401 (9th Cir. 1989) (rejecting defendants' contention that elimination of single competitor could not produce anticompetitive effect sufficient to violate antitrust laws); *Oltz v. St. Peter's Comty. Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988) (exclusion of single nurse anesthetist constituted sufficient reduction in competitive process to satisfy anticompetitive element); *Les Shockley*, 884 F.2d at 508-09 ("[c]onvergence of injury to a market competitor and injury to competition is possible when [as here] the relevant market is both narrow and discrete and the market participants are few").

[11] *United States v. Dentsply Int'l, Inc.* 399 F.3d 181, 191 (3d Cir. 2005) ("When a monopolist's actions are designed to prevent one or more new or potential competitors from gaining a foothold in the market by exclusionary, i.e., predatory conduct, its success in that goal is not only injurious to the potential competitor but also to competition in general.").

**V.    If Any Portion of the Complaint Is Deemed Deficient, Leave to Amend the Pleadings Should Be Freely Granted**

Leave to amend should be granted unless no possible amendment would cure the complaint's deficiencies.  *See* Fed. R. Civ. P. 15(a) ("leave shall be freely given when justice so requires"); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).  "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'"  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406 (9th Cir. 1960) (per curiam).  The underlying purpose is "to facilitate decision on the merits, rather than on the pleadings or technicalities."  *Webb*, 655 F.2d at 979.  Accordingly, if the Court should find any curable deficiency in the present Complaint, MGA should be given leave to cure the deficiency.

## CONCLUSION

For the reasons set forth above, MGA respectfully submits that Mattel's motion to dismiss lacks merit and should be denied in its entirety, or in the alternative, MGA should be given leave to amend the pleadings.

Dated:   January 17, 2012                          BLECHER & COLLINS, P.C.

By:   /s/ Maxwell M. Blecher
Maxwell M. Blecher
Attorneys for MGA Entertainment, Inc.

45885