O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MGA ENTERTAINMENT, INC., <br><br>        Plaintiff, <br><br>    vs. <br><br> MATTEL, INC., and ROBERT A. ECKERT, <br><br>        Defendants. | Case No.: SACV 11-01063 DOC(RNBx) <br><br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE** |

Before the Court is a second Motion to Dismiss filed by Defendants Mattel, Inc., and Robert A. Eckert ("Defendants") against Plaintiffs MGA Entertainment, Inc. ("MGA").  After reviewing the motion, opposition, and reply, and after hearing oral argument, the Court concludes that MGA's antitrust claim is barred by *res judicata* and by Federal Rule of Civil Procedure 13(a).  Accordingly, the Court GRANTS Defendants' Motion and DISMISSES WITH PREJUDICE.

    **I.**       **Background**

The gravamen of Defendants' Motion it that Plaintiff's antitrust claim in their First Amended Complaint ("FAC") is barred by *res judicata* and by Federal Rule of Civil Procedure 13(a).  The Court provides the following procedural history, which includes facts derived from several documents judicially noticed by this Court.[1]

### a. Prior Litigation Between Mattel and MGA: Cases 05-2727 and 04-9049

On April 27, 2004, Mattel, Inc., ("Mattel") filed a state court complaint against a former employee Carter Bryant ("Bryant") alleging that Bryant breached his contractual and common law duties to Mattel by failing to disclose his concept sketches and sculpts of the Bratz dolls prior to leaving Mattel for MGA Entertainment, Inc. ("MGA") on or about October 4, 2000.  (04-9049 Dkt. 1).

MGA intervened in Mattel's suit and, on April 13, 2005, filed a stand-alone complaint in federal court against Mattel for unfair competition, trade dress infringement, dilution, and unjust enrichment.  (05-2727 Dkt. 1).  That complaint alleges that Mattel infringed MGA's distinctive packaging and interfered with MGA's business relationships.

On June 19, 2006, the Honorable Stephen G. Larson consolidated these cases.  (05-2727 Dkt. 47).

### b. Phase 1 of Prior Litigation

Mattel entered into a settlement with Bryant on the eve of the "phase 1" trial, leaving the following claims against MGA and other defendants to be tried to the jury: (1) intentional interference with contract; (2) aiding and abetting breach of fiduciary duty; (3) aiding and abetting breach of duty of loyalty; (4) conversion; (5) statutory unfair competition; (6) declaratory relief; and (7) copyright infringement.  (04-9049 Dkt. 3917 at 11).  Mattel prevailed on each of its claims.  On the basis of the jury's special and general verdicts and after independently examining the similarity between the concept sketches/sculpts and MGA's Bratz dolls, the district court placed the Bratz trademarks in a constructive trust and enjoined MGA

---

[1] This court takes judicial notice of the documents filed with this Court as matters of public record.  *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001).

from continuing to sell dolls that were substantially similar to Bryant's initial works.  MGA appealed.

During the pendency of MGA's appeal of the phase 1 orders, discovery preceded on the claims not tried in the phase 1 trial.  Mattel repeatedly amended its pleadings three times, ultimately filing the operative Fourth Amended Answer and Counterclaims ("FAAC").  (04-9049 Dkt. 7714).  The FAAC alleged, among other things, MGA's violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") and trade secret misappropriation.  These claims arose from MGA's relationships with Bryant and other former Mattel employees who allegedly stole Mattel's confidential information before leaving Mattel.  The FAAC's claims also arose out of MGA's alleged litigation misconduct and unwillingness to comply with the phase 1 jury's verdicts, though many of these allegations were dismissed on August 2, 2010.

MGA, in turn, narrowed its trade dress infringement allegation to the two-pronged claim that Mattel copied MGA's trapezoidal and heart-shaped packaging.

### c.  Ninth Circuit Ruling Affecting Prior Litigation

On July 22, 2010, MGA prevailed on appeal of the phase 1 orders.  In vacating the constructive trust and injunction, the Ninth Circuit held that this relief was impermissibly broad and predicated upon jury verdicts tainted by erroneous instruction.

### d.  Phase 2 of Prior Litigation

On August 16, 2010, MGA filed counterclaims-in-reply alleging Mattel's RICO violations, trade secret misappropriation, and wrongful injunction.  (04-9049 Dkt. 8583).  MGA alleged that Mattel and its CEO, Robert Eckert, ("Eckert") engaged in illegal market research and aggressive tactics in preparation for and during the pending litigation, including discovery abuses, disregard for the statute of limitations, and the pursuit of injunctive relief after phase 1.

On October 5, 2010, the Court dismissed MGA's wrongful injunction claim but permitted MGA's other counterclaims-in-reply.  (Dkt. 8892).  The Court held that *all* MGA's counterclaims-in-reply, including the one for wrongful injunction, were compulsory.  *Id.* at 14.  However, the Court dismissed MGA's wrongful injunction counterclaim-in-reply on the merits,

reasoning that MGA sought to "recover two categories of damages that are unavailable as a matter of law."  *Id.*

On October 22, 2010, in response to the Ninth Circuit ruling, this Court granted MGA's motion for a new trial on all claims and issues tried to the jury in phase 1, finding that the indistinct and inseparable claims were all infected by instructional error.  The Court also discarded the earlier bifurcation of claims and ordered that all pending claims between the parties be tried in a single proceeding to commence on January 11, 2011.

On January 5, 2011, the Court granted Mattel summary judgment on MGA's claims for trade dress infringement, dilution, common law unfair competition, and unjust enrichment and MGA's counterclaim-in-reply for a RICO violation.  (Dkt. 9600).  The Court denied summary judgment as to MGA's claim for statutory unfair competition and MGA's counterclaim-in-reply for trade secret misappropriation.

### e.  Current Litigation and Original Complaint

On February 3, 2011, two weeks into trial in the prior litigation, MGA filed a complaint ("Original Complaint") in a stand-alone action against Mattel and Eckert ("Defendants").  Original Complaint (11-1063 Dkt. 1).  The Original Complaint pled three claims.  First, MGA alleged that "beginning at least . . . in 2001 and continuing through the present time [Defendants have] been violating Section 2 of the Sherman Act by monopolizing and attempting to monopolize the sale and distribution of fashion dolls in the United States."  *Id.* at ¶¶ 52-53.  Second, MGA alleged that Mattel sought a remedy in its prior litigation against MGA that "required the district judge to enter a ruling that was an abuse of discretion," giving rise to an abuse of process claim.  *Id.* at ¶¶ 59-60.  Finally, MGA alleged that Mattel sold Wee 3 Friends "at prices which are below [Mattel's] fully allocated cost," giving rise to a claim under California Business & Professions Section 17043.  *Id.* at ¶¶ 61-62.

### f.  Conclusion of Phase 2 and Effect on Case 11-1063 Motion to Dismiss

On August 4, 2011, this Court rendered judgment on the merits pursuant to a jury verdict in case 04-9049.  (Dkt. 10704).  The judgment awarded MGA $85 million in compensatory damages, $85 million in exemplary damages, and $2,172,000 in attorneys' fees for MGA's

counterclaim-in-reply for trade secret misappropriation.  Judgment was entered against MGA regarding its claims for common law unfair competition, statutory unfair competition, trade dress infringement, trade dress dilution, RICO violations, unjust enrichment, and wrongful injunction.  Judgment was also entered against Mattel regarding its remaining claims against MGA.  MGA was awarded addition attorneys fees and costs of more than $100 million.

On September 12, 2011, Defendants filed a Notice of Finality with the Court indicating that, because a final judgment had been entered in the prior litigation, Defendants' Motion to Dismiss the present case is no longer properly analyzed under the theory of claim-splitting, but rather under *res judicata*.  (11-1063 Dkt. 26).

### g.  First Motion to Dismiss Case 11-1063

On October 20, 2011, after hours of oral argument, this Court dismissed the Original Complaint.  *See* Order (Dkt. 29).  The Court held that Mattel's "conduct in the prior litigation— conduct which must have occurred before August 16, 2010"—is barred by *res judicata* and Rule 13(a).  *See id.* at 9.  However, the Court dismissed without prejudice because it did "not appear *impossible* for MGA to allege anticompetitive conduct *after* August 16, 2010."  *Id.* at 20 (emphasis in original).

### h.  First Amended Complaint in Case 11-1063

On November 10, 2011, MGA filed its First Amended Complaint ("FAC").  The FAC brings one antitrust claim and primarily alleges conduct done by Mattel before MGA's last pleading in the prior litigation on August 16, 2010.  *See e.g.,* FAC ¶¶ 32 ("[b]y the late 1990s . . . Mattel's share was over 90% of the fashion doll market"), 33 ("*Then came the competition*"), 36 ("In June 2001, [MGA] was propelled into the limelight after its daring release of an innovative line of Bratz fashion dolls"), 38 ("Toy Fair in January 2001"), 49 ("By the end of 2003 and early 2004, the reality of Mattel's inability to compete had set in.").

The gravamen of MGA's antitrust claim is that the prior litigation was sham litigation constituting an antitrust violation.  The FAC alleges that the prior case was the product of Mattel's "'litigate MGA to death' strategy," in which Mattel "pursued a result"—a constructive trust over the *idea* of Bratz—that was "so extreme that no objective litigant could have expected

it to survive full judicial review." *Id.* at ¶¶ 52, 59.  The FAC alleges that Mattel knowingly

litigated claims barred by the statute of limitations and committed discovery abuses that

constituted "misrepresentations" to the court.  *Id.* at FAC at ¶¶ 91, 93, 97-99, 87-88 ("after the

January 2011 trial commenced, additional facts continued to be uncovered, which further

demonstrate that . . . Mattel knew its original case was statute-barred and without any merit,"

specifically an "internal memo" about an "investigation filed in 2002 that related to whether

Bratz was an infringement"); *see also id.* at ¶¶ 50 ("As MGA proved in the underlying litigation,

Mattel's . . . strategy . . . consisted, in part, of anticompetitive practices . . . . Indeed, the jury

found that Mattel . . . misappropriated 26 categories of MGA trade secrets . . . ."), 53 ("Carrying

out this scorched earth strategy, Mattel filed and ruthlessly pursued claims against MGA . . . .

Mattel's litigation strategy involved launching thousands of discovery requests, taking needless

depositions, and filing hundreds and hundreds of motions."), 55 (citing cases in 2001 and 2003

recognizing Mattel's aggressive and sometimes sanctionable litigation practices).

The FAC also describes three instances of conduct that could have occurred after August

16, 2010: (1) "during the second trial," Mattel "wrongfully sought to withhold" Mattel's

"communications with Kohl's Department Stores"  and "35 boxes of Mattel documents," which

this Court ordered to be produced (FAC at ¶ 94); (2) "on August 11, 2011," Mattel filed post-

trial motions and appealed the adverse judgment it received in the prior litigation (*id.* at ¶ 79);

and (3) Defendants "secured the appointment of an auditor and temporary receiver . . . based on

false allegations" in court (*id.* at ¶ at 93).

Finally, the FAC alleges that this litigation conduct is continuing.  *See id.* at 54 ("Mattel's

'litigate MGA to death' strategy continues unabated to this very day, with Mattel continually

aggressively pursuing its baseless claims . . . ."); 80 ("Mattel has developed and continues to

ruthlessly deploy a costly, lengthy 'litigate MGA to death' strategy, pursuing a case . . . to

accomplish its anticompetitive objectives.").  Specifically, the FAC alleges that "[b]eginning at

least with the introduction of Bratz in 2001 and continuing uninterrupted through the present

time, [Mattel and Eckert have] been continuously violating Section 2 of the Sherman Act by

monopolizing and attempting to monopolize the sale and distribution of fashion dolls in the

United States.  Mattel destroyed the value of a competitive company by pursuing scorched earth, baseless litigation as an anticompetitive business objective." *Id.* at ¶ 104.

### i.   Present Motion to Dismiss Case 11-1063

On December 9, 2011, in lieu of an answer, Defendants filed the present Motion to Dismiss that is before the Court.[2]  (Dkt. 36).  In addition to arguments on the merits that this Order does not reach, Defendants contend that MGA's current complaint is procedurally barred either: (1) under the doctrine of *res judicata*; or (2) because the current claims were compulsory under Federal Rule of Civil Procedure 13(a).

## II.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949.  If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.*  Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950.  Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*  Dismissal does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)).

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).  However, exhibits attached

---

[2] Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted to be filed before an answer.  *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc*., 798 F.2d 1279, 1282 (9th Cir. 1986).   Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id*.

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)). However, a district court's discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

## III.   Discussion

Because the Court GRANTS Defendants' motion under the doctrine of *res judicata* and Federal Rule of Civil Procedure 13(a), the Court does not reach Defendants' alternative arguments on the merits.

### a.  MGA's FAC and Opposition Effectively Ask this Court to Reconsider Its Prior Order Dismissing the Original Complaint

Before delving into the merits of Defendants' Motion, this Court notes that MGA's First Amended Complaint ("FAC") and Opposition all but ask this Court to reconsider its prior order dismissing the Original Complaint.  In dismissing that Original Complaint, this Court previously held that Mattel's "conduct in the prior litigation—conduct which must have occurred before August 16, 2010"—is barred by *res judicata* and Rule 13(a).  *See* Order (Dkt. 29) at 9.  This Court dismissed the Original Complaint without prejudice because it did "not appear *impossible*

for MGA to allege anticompetitive conduct *after* August 16, 2010." *Id.* at 20 (emphasis in original).

In its Opposition, MGA does not dispute that most of the FAC's antitrust claim arises from injuries and litigation conduct occurring well before August 10, 2010.  Nor does MGA address the cases or arguments raised in Defendants' Motion that attack the paltry three allegations in the FAC regarding activity occurring after August 10, 2010.  Instead, MGA primarily relitigates this Court's prior holdings regarding the *res judicata* doctrine and whether the *Mercoid/Hydranautics* exception to Rule 13(a) should be expanded beyond the realm of patent law.  As a result, MGA offers this Court no basis on which to deny Defendants' Motion.

### b.  MGA's Claim Is Dismissed Under the Doctrine of *Res Judicata*

The doctrine of *res judicata*, also referred to as claim preclusion, bars any claims in a later case that could have been raised in a prior case where: (1) there has been a final judgment on the merits in the prior case; (2) the prior case involved the same parties or parties in privity; and (3) there is an identity of claims between the two cases.  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).[3]  Because *res judicata* is an affirmative defense, the burden is on Defendants, as the parties asserting it, to prove all of its elements.  *See* Fed. R. Civ. P. 8(c); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 n.4 (9th Cir. 1988) (abrogated on other grounds).

The parties do not dispute that this Court's judgment in the prior case (04-9049 Dkt. 10704) was a final judgment by a court of competent jurisdiction.[4]  Nor do they dispute that that the present case involves the same parties in privity.[5]

---

[3] If events were "actually litigated" in the prior suit, "then the res judicata bar would have to expand to encompass those events and others that might have been litigated with them."  *See L.A. Branch NAACP v. L.A. Unified School Dist.*, 750 F.2d 731, 740 (9th Cir. 1984).  However, *res judicata* does not require the claim to have been actually litigated in the prior suit.  *See Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982).  Indeed, *res judicata* prevents "an imaginative lawyer" from relitigating old facts by "attaching a different legal label."  *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1079 (9th Cir. 2003).

[4] On April 4, 2011, this Court rendered a final judgment on the merits in the prior case 04-9049. See Order (04-9049 Dkt. 10704).  Mattel's appeal of that decision does not impact the present

Thus, the only disputed element of *res judicata* is whether the prior cases (CV 05-2727 and CV 04-9049) share an identity of claims with the present case (CV 11-1063). Whether there is an identity of claims depends on four factors, the first of which is the most important, namely: (1) the two cases arise out of the same transactional nucleus of facts; (2) the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second case; (3) substantially the same evidence is presented in the two cases; and (4) the two cases involve infringement of the same right. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982). Because this Court concludes that these four factors show that MGA's current and prior cases share an identity of claims, *res judicata* bars the current claims and dismissal is proper.

### i. The same transactional nucleus of facts give rise to MGA's current and prior claims

Claims arise from the same transactional nucleus of facts where the same "transaction, or series of transactions" could give rise to both claims, often shown by the similarity of the allegations in the prior and current pleadings. *See Western Sys. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992); *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 691 (9th Cir. 2007). A later claim arises from a different transactional nucleus of facts where the later claim alleges "new injuries caused by new acts" of the defendant. *See Tahoe-Sierra Pres. Council, Inc.v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1076 (9th Cir. 2003). This rule regarding *res judicata* does not change when applied to an antitrust claim. To avoid being barred by *res judicata*, an antitrust claim must allege new injuries caused by new acts done "subsequent to the last date alleged in the prior adjudication." *Int'l Techs. Consultants v. Pilkington PLC*, 137 F.3d 1382,

---

analysis because "a final judgment retains all of its *res judicata* consequences pending decision of the appeal." *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988).

[5] Any dispute would indeed be unfounded given that Eckert is a senior employee of Mattel—a named party in MGA's prior litigation—and Eckert's conduct was the subject of MGA's prior claims. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 691 (9th Cir. 2007) (employees were parties in privity with corporation where corporation was prior suit's defendant and liability was premised on employee wrongdoing); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1064 (S.D. Cal. 2007) (finding privity "even if the named parties differ").

1388 (9th Cir. 1998).  The antitrust claim can not simply allege injuries or "damages from subsequent consequences of the earlier conduct."  *Id.*

Thus, *res judicata* bars MGA's current complaint if Defendants can show that: (1) MGA's allegations in its prior pleadings could give rise to the current claims; and (2) MGA fails to allege new injuries arising from new acts occurring between August 16, 2010, and November 10, 2011.  Those dates reflect MGA's last pleadings in the prior case and MGA's filing of its current FAC.

> **1. MGA's prior claims and its current antitrust claim share the same transactional nucleus of facts to the extent the antitrust claim relies on Defendants' litigation conduct before August 16, 2010**

The vast majority of MGA's antitrust claim relies on Defendants' conduct during and in preparation for litigation prior to August 16, 2010.  As shown by other documents filed with the Court, the FAC refers to conduct which occurred before August 16, 2010 and which was already detailed in MGA's pleadings, both in the prior case and in the present case's Original Complaint, which this Court dismissed.[6]  For example, the gravamen of the FAC's antitrust claim is that the prior case was the product of Mattel's "'litigate MGA to death' strategy," in which Mattel "pursued a result"—a constructive trust over the *idea* of Bratz—that was "so extreme that no objective litigant could have expected it to survive full judicial review."  FAC at ¶¶ 52, 59.  Similarly, the FAC alleges that Mattel knowingly litigated claims barred by the statute of limitations and made several "misrepresentations" to the court.  FAC at ¶¶ 91, 93, 97-99.  This litigation conduct occurred prior to August 16, 2010, and these same allegations appeared in MGA's pleadings on and prior to August 16, 2010.  *See* (04-9049) Dkt. 2573 ¶¶ 59-69 (MGA's March 8, 2008 proposed statement of facts); Dkt. 8583 ¶¶ 30-36, 60, 315-18 (MGA's August 16, 2010, counterclaims in reply).  For that very reason, this Court dismissed

---

[6] This court takes judicial notice of the documents filed with this Court as matters of public record.  *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001).  Defendants identified these documents in a useful chart in their briefing of the previous motion to dismiss.  *See* Mot. to Dismiss Complaint (Dkt. 11) at 9-10; Reply (Dkt. 20) at 3, n.1.

these same allegations three months ago when they appeared in MGA's Original Complaint. *See* Order (Dkt. 29) at 9-10; *see also* Compl. (Dkt. 1) at ¶¶ 16-25, 30, 59-60 (alleging that Mattel sought a remedy against MGA that "required the district judge to enter a ruling that was an abuse of discretion" and that Mattel litigated time-barred claims and engaged in discovery abuses).

In its Opposition, MGA does not dispute that the vast majority of MGA's antitrust claim relies on Defendants' litigation conduct before August 16, 2010.[7]  Thus, to the extent that the antitrust claim is based on Defendants' conduct in the prior litigation—conduct which must have occurred before August 16, 2010—the antitrust claim arises from the same transactional nucleus of facts as MGA's pleading in the prior litigation.

### 2. MGA's prior claims and its current antitrust claim share the same transactional nucleus of facts to the extent the antitrust claim relies on Mattel's non-litigation conduct that was actually litigated

The FAC contains a few references to non-litigation conduct by Defendants which was actually litigated in the prior action.  For example, the FAC alleges that, "[a]s MGA proved in the underlying litigation, Mattel's . . . strategy . . . consisted, in part, of anticompetitive practices such as infiltrating confidential competitor showrooms, accessing industry events with false identification, and representing sham toy retailers."  FAC ¶ at 50.  However, the FAC itself states that this non-litigation conduct was *already litigated* in the prior action—indeed, MGA received a judgment in its favor.  *See id.* ("Indeed, the jury found that Mattel . . . misappropriated 26 categories of MGA trade secrets . . . .").  Thus, the non-litigation conduct that was actually litigated is also barred by *res judicata*.  *See L.A. Branch NAACP v. L.A. Unified School Dist.*, 750 F.2d 731, 740 (9th Cir. 1984) (holding that, to extent plaintiffs "actually litigated the liability of the" Defendant, "then the res judicata bar would have to expand to encompass those events and others that might have been litigated with them").

---

[7] Instead, MGA argues that its antitrust claim arising from this litigation conduct was not ripe. The Court addresses this argument later in this Order.

**3.  To the extent that MGA's antitrust claim alleges litigation conduct after August 16, 2010, those allegations are either too conclusory to state a claim or are not new acts giving rise to a new antitrust injury**

The remaining litigation conduct alleged in the FAC constitute the same transactional nucleus of facts as the prior case because the remaining litigation conduct was not a new act creating a new antitrust injury separate from the injury created by Mattel's litigation conduct before August 16, 2010.  The FAC describes three instances of conduct that could have occurred after August 16, 2010: (1) "during the second trial," Mattel "wrongfully sought to withhold" Mattel's "communications with Kohl's Department Stores" and "35 boxes of Mattel documents," which this Court ordered to be produced (FAC at ¶ 94); (2) "on August 11, 2011," Mattel filed post-trial motions and appealed the adverse judgment it received in the prior litigation (*id.* at ¶ 79); and (3) Defendants "secured the appointment of an auditor and temporary receiver . . . based on false allegations" in court (*id.* at ¶ 93).[8]

**a.  Mattel's Discovery Abuses**

In *Tahoe-Sierra*, the Ninth Circuit held that *res judicata* barred plaintiffs from challenging the defendant planning agency's decision in 1999 to enforce a plan enacted in 1987 because the decision was not a distinct act giving rise to a new injury separate from the enactment of the plan. *See Tahoe-Sierra Pres. Council, Inc.v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1076 (9th Cir. 2003).  In the prior case, the plaintiffs had challenged the constitutionality of the plan itself; in the later case, they challenged the constitutionality of the decision to enforce the plan. *Id.* at 1078.  The court held that the "transactional nucleus of facts" the two suits shared was the "enactment of the 1987 Plan." *Id.*  The Court reached this

---

[8] MGA's Opposition does not identify these three instances of conduct as a basis to deny Defendants motion, nor does it discuss the cases or arguments made by Defendants in their Motion regarding this post-pleading conduct.  Instead, a substantial part of MGA's Opposition simply copies verbatim the cases and arguments MGA listed in its FAC, neither of which addresses the relevant issue of what conduct constitutes a new acts giving rise to a new antitrust injury.

conclusion because the defendant "acted in 1999 precisely as it was required to act by the plain terms of the 1987 Plan"; the "mere fact that it so acted in 1999 does not establish a new set of facts giving rise to a new legal claim." *Id.* at 1079.  The court rejected the plaintiff's "attempts to frame its complaint in terms of new injuries caused by new acts," because the present action "is in reality a prayer for relief from wrongs allegedly done" at a time when they could have been raised in the prior litigation. *Id.* at 1076.  The court concluded that the 1999 decision merely furnished plaintiffs with "more information about the extent of their alleged injury," but that this additional information did not create a "cause of action to recover increased damages from an injury that has already been addressed by a final judgment." *Id.* at 1079 n.12.

As in *Tahoe-Sierra*, *res judicata* bars MGA from challenging Mattel's discovery abuses in the prior litigation because the discovery abuses were not a distinct act giving rise to a new injury separate from Mattel's other litigation conduct.  In the prior case, MGA's RICO claim sought damages because Mattel engaged in discovery abuses and litigated time-barred claims. *See* (04-9049) Dkt. 2573 ¶¶ 59-69 (MGA's March 8, 2008 proposed statement of facts); Dkt. 8583 ¶¶ 30-36, 60, 315-18 (MGA's August 16, 2010, counterclaims-in-reply).  In the current antitrust claim, MGA alleges that Mattel engaged in discovery abuses in the prior case and withheld evidence that Mattel knew its claims were time-barred.  The transactional nucleus of facts that the two suits share is Mattel's conduct in the prior case, specifically, engaging in discovery abuses and litigating time-barred claims.  Simply because Mattel *continued* the litigation conduct for which MGA's RICO claim sought damages "does not establish a new set of facts giving rise to a new legal claim." *See Tahoe-Sierra*, 322 F.3d at 1079.  Rather, at most this continued conduct provided MGA with "more information about the extent of [its] alleged injury," but this additional information does not create a "cause of action to recover increased damages from an injury that has already been addressed by a final judgment." *Id.* at 1079 n.12.

Thus, the discovery abuses alleged in the FAC arise from the same transactional nucleus of facts as the prior case because these discover abuses were not new acts creating a new antitrust injury separate from the injury created by Mattel's litigation conduct before August 16, 2010.

### b.  Mattel's Appeal

For the purposes of determining when the statute of limitations runs for an antitrust claim based on litigation, the Ninth Circuit has held that a party's appeal of the judgment in a prior case does not constitute a "new and independent act" that "inflict[s] new . . . injury."  *Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987).  In reaching this conclusion, the court reasoned that "no new injury results from the act of appealing that the [victim of the antitrust violation] does not already endure as a result of the act of filing the action initially."  *Id.*

The Court imports this Ninth Circuit authority regarding the statute of limitations of an antitrust claim into the present *res judicata* analysis.  Mattel's act of appealing the judgment in the prior case did not impose a new injury on MGA separate from the injury MGA endured due to Mattel's litigation conduct in the prior case.  There was no new injury "because the reasonable expectation from the commencement of a lawsuit is that the plaintiff will pursue the litigation until it prevails or the last appeal is exhausted."  *See id.*  To hold otherwise would allow every victim of an antitrust violation based on sham litigation to file multiple suits at each phase in that sham litigation, a holding which would greatly undermine judicial economy.  *Cf. Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006) ("The doctrine of res judicata would become meaningless if a party could relitigate the same issue . . . merely by positing a few additional facts that occurred after the initial suit.").

Thus, Mattel's appeal of the prior case arises from the same transactional nucleus of facts as the prior case because the appeal was not a new act creating a new antitrust injury separate from the injury created by Mattel's litigation conduct before August 16, 2010.

### c.  Mattel's Court Action

Finally, to the extent that MGA relies on its allegation that Defendants "secured the appointment of an auditor and temporary receiver . . . based on false allegations" in court to argue that Defendants engaged in litigation conduct after August 16, 2010, this one-sentence allegation is too conclusory.  *See* FAC ¶ at 93.  In the prior Order dismissing MGA's Original Complaint, this Court previously held that a similar allegation was too conclusory.  *See* Order

(Dkt. 29) at 9-10 n.5 (rejecting allegation in Paragraph 30(c) of the Original Complaint that Defendants filed a "baseless and frivolous new lawsuit" in court).

### 4.   MGA's allegation that antitrust violations "continue" or are "uninterrupted" is too conclusory to state a claim

Finally, the FAC sporadically describes Mattel's litigation conduct as "continuing" or "uninterrupted."  *See* FAC at ¶ 80 ("Mattel . . . continues to ruthlessly deploy a costly, lengthy 'litigate MGA to death' strategy, pursuing a case . . . to accomplish its anticompetitive objectives.").  In addition, the claim for relief states that:  "[b]eginning at least with the introduction of Bratz in 2001 and continuing uninterrupted through the present time, [Mattel and Eckert have] been continuously violating Section 2 of the Sherman Act by monopolizing and attempting to monopolize the sale and distribution of fashion dolls in the United States."  *Id.* at ¶ 104.

Given that this Court has concluded that the FAC's other allegations share a transactional nucleus of facts with the prior case, the remaining issue is whether MGA's reference to continuous activity is too conclusory to allege new antitrust injuries arising from new acts by Defendants between August 16, 2010, and November 10, 2011.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("A court need not credit a complaint's . . . allegations that are merely conclusory.").  The Court concludes that these allegations are too conclusory.

In *Dual-Deck*, the Ninth Circuit applied collateral estoppel—also referred to as issue preclusion and a close cousin of *res judicata*—to bar an antitrust claim where the complaint asserted "violations of [antitrust] law and other acts taken by the defendant . . . since the filing" of the prior suit and incorporated the factual allegations from the prior suit's complaint.  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1463 (9th Cir. 1993).  The Ninth Circuit held that this "ambiguous" reference to activity "since the filing" did not show that the plaintiff alleged that defendants had formed a new conspiracy *after* the filing, which was a necessary element of the antitrust claim.  *Id.* at 1463-64.  Later courts have interpreted *Dual-Deck* as holding that the "plaintiff alleged damages from subsequent *consequences* of the earlier conduct," not new *conduct* done after the filing.  *Int'l Techs. Consultants v. Pilkington PLC*, 137

1  F.3d 1382, 1388 (9th Cir. 1998) (emphasis added) (recognizing that *Dual-Deck* could also be
2  applied to *res judicata* analysis).

3      In contrast, in *Harkins* the Ninth Circuit held that *res judicata* did not bar an antitrust
4  claim where the later complaint alleged that, "at least as early as September 1, 1976 and
5  continuing without interruption[, defendants] formulated a plan and have continuously pursued a
6  course of conduct intended to unreasonably restrain trade."  *Harkins Amusement Enterprises,*
7  *Inc. v. Harry Nace Co.*, 890 F.2d 181, 182 (9th Cir. 1989).  The court reasoned that it would be
8  "over-technical" to construe the complaint as alleging that a conspiracy formed *only* in
9  September 1, 1976.  *Id.*  Thus, the court read the complaint as alleging that defendants
10 "conspire[d] continuously since that date," which meant that defendants' conspiracy formed
11 *after* the pleadings in the prior litigation.  *Id.*  The Ninth Circuit also noted that, "by the
12 defendants' own concession," the facts alleged in the later and prior complaints were "at least 10
13 percent different," in addition to being "conduct that occurred in a different time period."  *Id.* at
14 184.

15     The Court finds *Dual-Deck* more persuasive and distinguishes *Harkins*.  First, unlike in
16 *Harkins*, Defendants here do not concede that MGA's current complaint contains 10 percent
17 new allegations.  Instead, Defendants have demonstrated that MGA reiterates the same
18 allegations as in its prior pleadings and that the allegations regarding conduct after August 16,
19 2010, were not new acts giving rise to new antitrust injuries.

20     Second, like in *Dual-Deck*, MGA's current complaint fails to identify by date the new
21 conduct creating new antitrust injury that could be the basis for the allegation that Mattel is
22 "continuously violating" antitrust laws.[9]  Like in *Dual-Deck*, MGA's Opposition Brief does not
23 identify *any* allegations of conduct after August 16, 2010, in the current complaint—indeed,
24 MGA omits any mention of Mattel or Eckert's conduct between August 16, 2010, and
25 November 10, 2011, in its summary of the facts of this case.  (Pl. Opp'n at 4).  And, like in

---

27 [9] As the Court has already explained, the three allegations of conduct occurring after MGA's
   pleadings on August 16, 2010, do not constitute new acts giving rise to a new antitrust injury.
28 Thus, if these allegations are the "continuing" conduct to which the FAC refers, these
   allegations are not enough to prevent dismissal.

*Dual-Deck*, MGA recreates allegations from its prior pleadings, including repeating verbatim allegations from its Original Complaint that this Court previously dismissed.  *Compare* FAC ¶ 81 *with* Compl. ¶ 24.

Given that MGA's current claims mirror its prior allegations and that MGA's Opposition Brief does not identify a single allegation in the FAC regarding a new antitrust injury derived from a new act by Defendants since August 16, 2010, MGA's allegations that Defendants' antitrust violations are "continuing" are too conclusory.  At best, like in *Dual-Deck*, MGA is only alleging "damages from subsequent consequences of the earlier conduct," and not new conduct occurring after August 16, 2010.  *See Int'l Techs. Consultants v. Pilkington PLC*, 137 F.3d 1382, 1388 (9th Cir. 1998).

### ii.   The remaining factors also indicate that MGA's current and prior claims are the same

As noted earlier, courts consider three additional factors to determine if two suits share an identity of claims, namely whether: (1) substantially the same evidence is presented in the two actions; (2) the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; and (3) the two suits involve infringement of the same right.  These factors militate strongly in favor of preclusion.

First, MGA's reliance on the same factual allegations in both its present and prior claim demonstrates that the same evidence would be presented to prove both claims.  MGA argues that "new and distinct evidence is required to prove an antitrust claim, including detailed market analysis and expert economist opinions."  Opp'n at 9.   However, the availability of *additional* evidence is not enough.  Instead, the controlling issue is whether substantially the same evidence could be used to satisfy both claims.  *See Western Sys. v. Ulloa*, 958 F.2d 864, 871-872 (9th Cir. 1992); *Int'l Union of Operating Eng'r-Employers Constr. Indus. Pension v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993) (*res judicata* may apply even where there is some difference in the evidence).  MGA failed to *introduce* evidence of market analysis in the prior case because MGA failed to *plead* an antitrust violation; such a failure does not preclude *res judicata*.  *See In re International Nutronics*, 28 F.3d 965, 970-71 (9th Cir. 1994) (holding that *res judicata* barred

antitrust claim in later case because "evidence of unlawful collusion" that would support antitrust claim "ought to have been brought forward at the" prior case, and thus the prior "proceeding was a perfunctory and narrow one only because the [antitrust victim] chose not to make it otherwise").

Second, the two suits involve infringement of the same right, namely, MGA's right to compete in the market free from Mattel's allegedly illegal litigation strategy.

Finally, the rights established in the prior judgment would be destroyed or impaired by prosecution of the current antitrust claim.  If MGA is successful in its current claims, it could lead to either a double recovery for the same injury or recovery for a claim against which Mattel previously successfully defended.  For example, judgment was previously entered against MGA regarding its counterclaims-in-reply that Mattel was liable for RICO violations and wrongful injunction—two claims that share the same transactional nucleus of facts as the current antitrust claim.  Yet, MGA's current antitrust claim now seeks damages for Defendants' pursuit of this unreasonable injunctive relief.

### iii.  *Res judicata* is not set aside due to equitable considerations

In the FAC and its Opposition, MGA argues that this Court's imposition of a trial date in January 2011 gave MGA too little time to prepare an antitrust case, and thus MGA did not raise an antitrust claim on August 16, 2010.  (Opp'n 18).  However, *because* MGA never advanced its antitrust claim, the Court was not given the opportunity to decide whether to extend the trial deadline.  Regardless, the Ninth Circuit and Supreme Court have "rejected any equitable exceptions to the application of *res judicata* based on 'public policy' or 'simple justice.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (rejecting argument that *res judicata* should not apply due to counsel's failures in prior case); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 69 L. Ed. 2d 103, 101 S. Ct. 2424 (1981).

Furthermore, MGA cannot now contend that this Court procedurally precluded MGA from raising its antitrust claim when the failure rests with MGA.  In the prior litigation, this Court *agreed* with MGA that all its counterclaims-in-reply were compulsory, including the

RICO and wrongful injunction claims which share the same transactional nucleus of facts as MGA's current antitrust claim.  (04-9049 Dkt. 8892 at 14).  Because these RICO and wrongful injunction counterclaims-in-reply were compulsory, the Court allowed MGA to raise those claims in the prior litigation.  The Court dismissed MGA's wrongful injunction counterclaim-in-reply on the merits, reasoning that MGA sought to "recover two categories of damages that are unavailable as a matter of law."  *Id.*  Because the Court dismissed MGA's wrongful injunction counterclaim-in-reply on the merits, MGA's own failure to articulate a cognizable claim arising from the injunction prevented MGA from further litigating that claim.

Finally, this is not a case where the victim of sham litigation was kept ignorant about the sham until after she filed her last pleading in the case.  *Res judicata* would not prevent such a victim from bringing an antitrust claim after discovering the baselessness of the sham litigation.  *See Western Sys. v. Ulloa*, 958 F.2d 864, 871-872 (9th Cir. 1992) ("Ignorance of a party does not . . . avoid the bar of res judicata unless the ignorance was caused by the misrepresentation or concealment of the opposing party.").  Here, the facts giving rise to MGA's current antitrust claim were either in MGA's possession or were public knowledge well before August 16, 2010—which is why, on that date, MGA pled these facts in its RICO and wrongful injunction counterclaims-in-reply.  MGA simply chose to style those facts as a claim under RICO and for wrongful injunction.  In short, the Court's ruling is narrow; it merely holds that *res judicata* bars a later claim that is based on allegations of misconduct of which the claimant was previously aware *and had alleged* in the prior case.

### iv.  Conclusion

In sum,  an identity of claims is shown because MGA's current and prior pleadings arise from the same transactional nucleus of facts and the remaining other three factors also militate in favor of claim preclusion.  The parties do no dispute that there has been a final judgment on the merits in the prior case and that the prior case was between parties in privity.  Equitable considerations do not prevent the application of *res judicata*.  Accordingly, *res judicata* bars MGA's antitrust claim because there has been a final judgment on the merits in a prior case, that

prior case was between parties in privity, and the prior and present cases involve an identity of claims.  *See Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982).

### c.   MGA's Claim Is Dismissed Because It Was Compulsory in the Prior Litigation

A party who fails to plead a compulsory counterclaim in a prior action, as required under Federal Rule of Civil Procedure 13(a), is precluded from raising that claim in a later action. *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1201 (9th Cir. 2010). The purpose of this rule is "to prevent multiplicity of litigation and to promptly bring about resolution of disputes before the court." *Id.*

A counterclaim is compulsory where it: (1) "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"; and (2) exists at the time the counterclaimant serves its pleading.[10] Fed. R. Civ. P. 13(a).  In the prior litigation, this Court followed MGA's urging and applied Ninth Circuit precedent to hold that Rule 13(a) applied not only to counterclaims, but also rendered compulsory MGA's counterclaims-in-reply, which were filed in response to Mattel's Fourth Amended Answer and Counterclaims.  *See* Order 4:16-18 (04-9049 Dkt. 8892); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1525 (9th Cir. 1985) (applying logical relationship test of FRCP 13(a) to counterclaim-in-reply).

Thus, MGA's current antitrust claim is precluded if Defendants can show that the claim: (1) arose from the same transaction as Mattel's last pleadings in the prior case, which were Mattel's Fourth Amended Answer and Counterclaims ("FAAC") (04-9049 Dkt. 7714); and (2) existed when MGA filed its last pleadings in the prior litigation, which were counterclaims-in-reply filed on August 16, 2010 (04-9049 Dkt. 8853).  Although the Court concludes that these two requirements are all that it should consider under Rule 13(a), the Court also addresses MGA's argument that the Supreme Court and Ninth Circuit have created an exception to the compulsory counterclaim rule for antitrust claims arising from sham litigation.[11]

---

[10] The term "transaction" in Rule 13(a) includes "a series of occurrences."  *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1, 94 S.Ct. 2504, 2506 n.1 (U.S. 1974).

[11] Regarding this exception, MGA's Opposition advances the same arguments that this Court found unconvincing when it previously dismissed the Original Complaint.

### i. MGA's current antitrust claim based on Defendants' litigation conduct shares a logical relationship with Mattel's pleadings in the prior litigation

The Ninth Circuit's "logical relationship test" holds that a claim arises from the same transaction, and thus is compulsory, where it "arises from the same aggregate set of operative facts" as the opponent's pleadings. *See In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992). Two claims may be logically related even though they do not arise out of the same nucleus of facts. *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210-13 (2d Cir. 2004) ("Although the 'logical relationship' test does not require 'an absolute identity of factual backgrounds,' . . . the 'essential facts of the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."). A logical relationship may exist even if the counterclaim's allegations need not be resolved in order to dispose of the underlying claim. *In re Marshall*, 600 F.3d 1037, 1058-59 (9th Cir. 2010).

Applying the logical relationship test, MGA's current antitrust claim shares a logical relationship with Mattel's pleadings in the prior litigation. MGA's current antitrust claim and Mattel's RICO claim raised in the prior litigation share a logical relationship because each alleges misconduct by the other during the litigation of cases 05-2727 and 04-9049. In the prior litigation, Mattel's FAAC alleged, among other things, that MGA committed RICO violations because of MGA's alleged misconduct and unwillingness to comply with the phase 1 jury's verdicts in the prior litigation. In its current antitrust claim, MGA alleges that Mattel engaged in misconduct during the prior litigation through discovery abuse, disregard for the statute of limitations, and pursuit of unreasonable injunctive relief. Because both MGA's current claim and Mattel's prior claim arise from the parties' conduct in the prior litigation, MGA's current antitrust claim was compulsory and should have been brought in the prior litigation.

This conclusion is consistent with the holdings by several courts that an antitrust claim based on sham litigation is a compulsory counterclaim in the very litigation that is alleged to be a sham. *See, e.g.*, *Critical-Vac Filtration Corp. v. Minuteman Int'l., Inc.*, 233 F.3d 697, 700 (2d

Cir. 2000) (holding sham litigation claim compulsory in the action alleged to be "sham," since "[a]n obvious 'logical relationship exists" between the actions); *Eon Labs., Inc. v. Smithkline Beecham Corp.*, 298 F. Supp. 2d 175, 179-81 (D. Mass. 2003) (holding "sham litigation" compulsory in litigation alleged to be sham); *Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F. Supp. 2d 161, 162, 165-66 (E.D.N.Y. 1999) (antitrust claim based on defendant's pursuit of litigation was "plainly compulsory" in the underlying litigation).

Furthermore, other courts in this Circuit have held an antitrust claim to be compulsory where, as here, the antitrust victim's pleading in the prior case alleges similar facts to the ones alleged in the later case's antitrust claim. In *Grumman*, the court dismissed a California antitrust claim brought in a later case because it was a compulsory counterclaim to the prior case for copyright infringement. *See Grumman Systems Support Corp. v. Data General Corp.*, 125 F.R.D. 160, 162 (N.D.Cal. 1988). The Court reasoned that the two actions shared a logical relationship because the antitrust victim's answer in the earlier action and complaint in the later action both "alleged monopolization by copyright misuse" by the same party. *Id.* The court reached this conclusion even though the later action alleged "additional facts going to its monopolization claim" and brought claims against two additional defendants over whom no personal jurisdiction existed in the prior action. *Id.* at 162, 163. The court noted that the differences between the legal theories advanced by the antitrust victim in the two cases "is largely irrelevant to Rule 13(a) analysis" because the "central issue is whether there is a logical relationship between the claims in the two actions." *Id.* at 162-63.

Like the plaintiff in *Grumman*, MGA previously defended against copyright infringement claims and now brings an antitrust claim in a later case. Like in *Grumman*, the two actions share a logical relationship because the MGA's pleadings in the two cases both allege the same facts: Mattel's discovery abuses, disregard for the statute of limitations, and pursuit of unreasonable injunctive relief in the prior litigation. Like in *Grumman*, even if MGA's antitrust claim alleges "additional facts going to its monopolization claim," these additional facts do not eliminate the logical relationship between the prior and present claims. *See id.* at 162, 163. Finally, like in *Grumman*, the differences between the legal theories advanced by MGA in the two cases—

RICO and wrongful injunction in the prior case versus an antitrust claim in the present case—"is largely irrelevant to Rule 13(a) analysis" because the "central issue is whether there is a logical relationship between the claims in the two actions." *See id.* at 162-63.

Finally, courts have rejected similar arguments to the one MGA advances here, namely, that "judicial economy and fairness support" the characterization of MGA's antitrust claim as a "permissive claim." *See* Opp'n at 19. For example, the Ninth Circuit has held that an antitrust claim is compulsory in a prior infringement action because, "although the antitrust and patent infringement claims are grounded in different statutes, they raise many of the same legal, factual, and evidentiary issues" such that "[j]udicial economy and efficiency counsel analysis of these issues in a single proceeding." *Destiny Tool v. SGS Tools Co.*, 344 Fed. Appx. 320, 323 (9th Cir. 2009); *see also Mosdos Chofetz Chaim, Inc. v. Village Of Wesley Hills*, 701 F. Supp. 2d 568, 590 (S.D.N.Y. 2010) (allegation that prior lawsuit was a "pretext for illegal actions" is "logically intertwined" with the validity of the claims in the prior lawsuit and, consequently, principles of "judicial economy and fairness dictate that all the issues should be resolved in one lawsuit") (internal quotation marks omitted). In addition, treatises note that "[d]espite the fact that antitrust counterclaims involve a number of different issues, such as market definition and market power, several lower courts have ruled that antitrust counterclaims are compulsory counterclaims to infringement and similar actions under Federal Rule of Civil Procedure 13(a)." Jay Dratler, Jr., Licensing of Intellectual Property §2.04[1] n.10 (2006) (listing cases from the Third, Sixth, Seventh, and Ninth Circuits).

Thus, MGA's current antitrust claim arose from the same transaction as Mattel's last pleadings in the prior case.[12]

### ii.  MGA's antitrust claim was not unripe on August 16, 2010

As noted previously, Rule 13(a) bars claims in a later case that could have been brought in a prior case. *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1201

---

[12] Although MGA does not argue that its current antitrust claim survives Rule 13(a) based on the three allegations of Defendants' litigation conduct after August 16, 2010, the same analysis this Court applied in this Order's *res judicata* discussion would lead to the conclusion that this conduct was not a new act creating a new antitrust injury.

(9th Cir. 2010).  However, if a claim was not ripe at the time of MGA's last pleadings on August 16, 2010, that claim could not have been brought in that prior case.  *See* Fed. R. Civ. P. 13(a) (requiring counterclaim to exist at the time the counterclaimant serves its pleading).  Thus, an unripe claim would not be barred in the present case.

MGA latches onto this rule and contends that its "antitrust claim was not ripe and was premature until MGA secured a favorable verdict and judgment in the underlying suit."  (Pl. Opp'n at 18).  MGA analogizes its antitrust claim to the common law tort of malicious prosecution, which requires that the tort victim obtain a judgment in her favor in the underlying litigation that is the malicious prosecution.  *See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 62, 62 n.7 (1993) (stating that the tort requires an "unsuccessful civil lawsuit"); Restatement (Second) of Torts § 674 (1977) (stating that the tort requires that "the proceedings have terminated in favor of the person against whom they are brought").  MGA argues that, like in a malicious prosecution claim, an antitrust claim based on sham litigation should require, as an element of that claim, that the victim obtain a judgment in her favor in the underlying litigation that is the sham.

MGA's primary authority, *Professional Real Estate Investors*, does not support MGA's argument that this Court should import this malicious prosecution requirement into an antitrust claim.  *Professional Real Estate Investors* was not decided on ripeness grounds and says absolutely nothing about whether the victim of sham litigation must obtain a judgment in her favor in the underlying litigation before bringing an antitrust claim.  *See Professional Real Estate Investors, Inc.*, 508 U.S. at 57 (explicitly defining the issue addressed as "whether litigation may be sham merely because a subjective expectation of success does not motivate the litigant" and "answer[ing] this question in the negative").

Furthermore, MGA's novel rule urges exactly the kind of overreach that the Supreme Court cautioned against in *Professional Real Estate Investors* by seeking to "transplant[] every substantive nuance and procedural quirk of the common-law tort of wrongful civil proceedings into federal antitrust law."  *See Professional Real Estate Investors*, 508 U.S. at 68 (Souter, J., concurring) (expressing "concern that other courts could read today's opinion" too broadly).

Indeed, no case has interpreted *Professional Real Estate Investors* to stand for the proposition that MGA urges. *See Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories*, Inc., 552 F.3d 1033, 1046 (9th Cir. 2009) (explaining that "*Professional Real Estate Investors* provides a strict two-step analysis to assess whether a single action constitutes sham petitioning"); 2 Holmes, Intellectual Property and Antitrust Law § 38:4 (explaining the different tests for an antitrust claim based on one sham case versus several cases).

Finally, while MGA cites no authority that supports its novel rule, the several cases discussed in the previous section hold that an antitrust claim is a compulsory counterclaim in the very case alleged to be a sham because joint adjudication of the claims will conserve judicial and party resources. *See, e.g.*, *Critical-Vac Filtration Corp. v. Minuteman Int'l., Inc.*, 233 F.3d 697, 700 (2d Cir. 2000). In fact, in the very case on which MGA relies, the victim of the purportedly sham litigation brought its antitrust claim as a counterclaim *in* that sham litigation *before* receiving a favorable judgment. *See Professional Real Estate Investors*, 508 U.S. at 52 ("In 1983, [plaintiff] sued [victim of purported sham] for alleged copyright infringement" and the victim "counterclaimed, charging [plaintiff] with violations of §§ 1 and 2 of the Sherman Act"). In addition, the very treatise on which MGA relies states that "an antitrust counterclaim for anticompetitive litigation can clearly be brought before the underlying suit has terminated." *See* Herbert Hovenkamp, Mark D. Janis, Mark A. Lemley, IP and Antitrust, Antitrust Allegations as Compulsory Counterclaims in Enforcement Litigation §11.3b6(B) (2001) (discussing *Professional Real Estate Investors*).

Given the overwhelming weight of authority, this Court resists MGA's urging to create a new element to an antitrust claim that requires the victim of sham litigation to obtain a judgment in her favor in the sham litigation before bringing an antitrust claim.

### iii. The Court is not persuaded to extend the *Mercoid / Hydranautics* exception to prior cases that are not based on patent infringement

In *Mercoid*, the Supreme Court held that an antitrust claim based on prior patent infringement litigation was not a compulsory counterclaim in that patent litigation, but rather a permissive counterclaim under Federal Rule of Civil Procedure 13(b). *Mercoid Corp. v. Mid-*

1    *Continent Inv. Co.*, 320 U.S. 661, 671, 64 S. Ct. 268, 274 (1944) (overruled on other grounds, as

2    stated in *Beal Corp. Liquidating Trust v. Valleylab, Inc.*, 927 F. Supp. 1350, 1361 (D. Colo.

3    1996)).  A half-century later, the Ninth Circuit relied on *Mercoid* to hold in *Hydranautics* that "a

4    claim that patent infringement litigation violated an antitrust statute is a permissive, not a

5    mandatory, counterclaim in a patent infringement case, and is not barred in a subsequent suit by

6    failure to raise it in the infringement suit."  *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536

7    (9th Cir. 1995).

8         MGA urges this Court to extend *Mercoid* and *Hydranautics* beyond the realm of patent

9    infringement and to hold that MGA's antitrust claim was not a compulsory counterclaim in the

10   prior non-patent-related litigation.  MGA argues that neither *Mercoid* nor *Hydranautics*

11   expressly limit their holdings to prior litigation involving patent infringement, and thus these

12   holdings can be extended to the present case.

13        First, as Defendants note, MGA cites no case within the Ninth Circuit that extends

14   *Mercoid* or *Hydranautics* beyond the realm of patent infringement and courts in this circuit have

15   refused to do so.  MGA does cite one case, *Mead*, in which an Ohio district court held that an

16   antitrust claim was not a compulsory counterclaim in the prior *copyright* infringement litigation.

17   *See Mead Data Central v. West Pub. Co.*, 679 F.Supp. 1455 (S.D.Oh. 1987).  However, a court

18   in this Circuit has rejected any analogy to *Mead* because *Mead* applied the Sixth Circuit's

19   standard for compulsory counterclaims and did so in a manner that "differs from the Ninth

20   Circuit standard in several ways."  *See Grumman Systems Support Corp. v. Data General Corp.*,

21   125 F.R.D. 160, 163 (N.D.Cal. 1988).  Furthermore, courts in this and other circuits have not

22   followed *Mead* and have not extended *Mercoid* or *Hydranautics* when urged to do so.  In fact,

23   the Ninth Circuit has noted that, since *Hydranautics*, the *Mercoid* exception has been read "more

24   narrowly" by other circuits to apply to patent misuse, but not patent invalidity.  *Destiny Tool v.

25   SGS Tools Co.*, 344 Fed. Appx. 320, 323 (9th Cir. 2009); *see also Grumman*, 125 F.R.D. at 163

26   ("[I]t is clear at this point that there is no such general exception [grounded in *Mercoid*] to the

27   operation of Rule 13(a) and no case decided in the last twenty years holds to the contrary.");

28   Herbert Hovenkamp, Mark D. Janis, Mark A. Lemley, IP and Antitrust, Antitrust Allegations as

Compulsory Counterclaims in Enforcement Litigation §5.5 n.22 (2001) (noting that cases applying *Mercoid* to prior non-patent-related litigation are "aberrational").

Second, while neither *Mercoid* nor *Hydranautics* expressly limit their holdings to patent infringement litigation, the Ninth Circuit's policy *justification* for an exception to the compulsory counterclaim rule applies to only patent infringement litigation.  In *Hydranautics*, the Ninth Circuit explained that the *Mercoid* exception was due to the unique appeals process in patent infringement litigation.  *Hydranautics*, 70 F.3d at 536.  Because patent infringement decisions are appealed to the Federal Circuit, treating antitrust claims as compulsory in patent infringement litigation could result in a "difference between the antitrust law generally applicable within each regional circuit, and antitrust law in predatory patent infringement cases." *Id.*  While this may be an ex post facto explanation for *Mercoid*'s opaque decision, the Court nonetheless finds the Ninth Circuit's logic a persuasive justification.[13]

Because other courts have not extended *Mercoid* or *Hydranatics* to prior litigation that is not based on patent infringement, this Court will not exempt MGA's antitrust claim from the traditional compulsory counterclaim analysis.

### d.  Because MGA's First Amended Complaint Does Not Cure the Defects Previously Identified By this Court, Dismissal With Prejudice Is Proper

A district court's discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).  In addition, leave to amend "need not be granted where the amendment of the complaint . . . constitutes an exercise in futility."  *Id.*

As explained in this Order, MGA has failed to amend its pleadings to include new acts by Mattel giving rise to new antitrust injury after August 16, 2010.  This failure, as well as MGA's arguments in its Opposition, indicates that MGA will not amend its complaint to include post-August 16, 2010, activity because MGA does not believe its complaint is defective as a matter

---

[13] Other Circuits have bemoaned how *Mercoid* "effectively created an exception" to the definition of a compulsory counterclaim "without acknowledging or explaining the exception." *Critical-Vac Filtration Corp. v. Minuteman Intern., Inc.*, 233 F.3d 697, 702 (2d Cir. 2000).

of law.  Instead, the parties clearly intend to seek the Ninth Circuit's guidance on the doctrine of *res judicata* and whether the *Mercoid*/*Hydranautics* exception to Rule 13(a) should be expanded beyond the realm of patent law.  Accordingly, the Court can offer MGA no further guidance on how to amend its complaint to cure the present defects.

Therefore, the Court GRANTS Defendants' motion and DISMISSES WITH PREJUDICE.

## IV.    Disposition

For the reasons stated above, the Court GRANTS Defendants' motion and DISMISSES WITH PREJUDICE.


DATED:  February 21, 2012

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE